# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

C.C.,

                    Plaintiff,

        vs.

JAMAL F. RASHID, *et al.*,

                    Defendants.

Case No.: 2:23-cv-02056-GMN-BNW

**ORDER GRANTING MOTIONS TO DISMISS**

Pending before the Court are six Motions to Dismiss ("MTDs") filed by Defendants Wynn Las Vegas, LLC, (ECF No. 69), The Light Group, LLC, (ECF No. 70), Highgate Hotels, L.P., (ECF No. 71), STK Las Vegas, LLC, The One Group, LLC, and The One Group Hospitality, Inc., (ECF No. 72), MGM Resorts International, Aria Resort & Casino, LLC, and Nevada Property 1, LLC, (ECF No. 73), and Radisson Hospitality, Inc., (ECF No. 103).[1] Plaintiff filed an Omnibus Response, (ECF No. 88), to the first five Motions to Dismiss, and a separate Response, (ECF No. 105), to Radisson's Motion to Dismiss.  Defendants filed Replies, (ECF Nos. 90–94, 106).

Also pending before the Court is Plaintiff's Motion to Take Judicial Notice, (ECF No. 107).  Defendants MGM, Aria, Nevada Property 1, Highgate, STK, The One Group, The One Group Hospitality, The Light Group, and Wynn, filed a Response, (ECF No. 110).  For the

---

[1] Jamal Rashid is the only Defendant that did not file a Motion to Dismiss.  The Court's conclusions in this Order do not affect Plaintiff's claims against Defendant Rashid.  To the extent, however, that Plaintiff amends her complaint to allege that equitable tolling applies to her TVPRA claim, she may allege facts specific to each Defendant, including Rashid.

reasons discussed below, the Court GRANTS Defendants' Motions to Dismiss and DENIES Plaintiff's Motion to Take Judicial Notice.

## I.    **BACKGROUND**

This action arises from Defendants' alleged involvement with Plaintiff being sex trafficked in their establishments. (*See generally* First Am. Compl. ("FAC"), ECF No. 57). Plaintiff grew up in a broken home and with an unstable living situation. (*Id.* ¶¶ 36–39). In 2010, when Plaintiff was 19 years old, she became a victim of sex trafficking perpetrated over the next several years by numerous individuals. (*See generally id.*). The trafficking began in Las Vegas by a pimp named Walter.[2] (*Id.* ¶¶ 55–58). As part of the trafficking schemes, Plaintiff performed "out calls" (in which she traveled to a client) and "walked the carpet" (walked inside Las Vegas casinos in search of potential clients). (*Id.* ¶¶ 55, 68). When she performed these out calls and walked the carpet, she entered the casinos named in this action wearing clothing and makeup that intentionally advertised her availability for commercial sex. (*Id.* ¶ 69). Plaintiff alleges that the Defendants Wynn, Aria, MGM, and Nevada Property 1 (operator of the Cosmopolitan), along with their employees, should have known that she was being trafficked due to her clothing and behavior, such as frequent visits to hotel rooms and hanging around the tables of high rollers in nightclubs despite her being under 21 years old. (*Id.* ¶¶ 89–97).

In 2011, a stranger named Oscar reached out to Plaintiff on Facebook and offered to help her escape sex trafficking by flying her to meet him in New York City. (*Id.* ¶ 98). Plaintiff flew to New York City to meet Oscar at the Lexington Hotel. (*Id.* ¶ 100). Defendant Highgate operated the Lexington Hotel as a franchise of Defendant Raddison. (*Id.* ¶ 4). Plaintiff alleges that she met Oscar in his room at the Lexington Hotel, and Oscar trafficked her over a four-month period in 2011. (*Id.* ¶¶ 101–06). Oscar kept her prisoner in their room at the Lexington

---

[2] All names in this case are fictious either to protect the named individual or to protect Plaintiff.

Hotel, leaving only when a client was present. (*Id.* ¶ 110). Plaintiff alleges that based on Oscar's "pattern of behavior," combined with the steady stream of male visitors to their room at the Lexington Hotel, "it would have been almost impossible for the [staff] to miss" signs that Plaintiff was being trafficked. (*Id.* ¶ 111). Plaintiff also alleges that Highgate and Radisson created "a corporate culture at the Lexington that discouraged employees from interfering with probable sex trafficking unless they were absolutely, one-hundred-percent certain they are looking at a victim of serious physical abuse and direct physical coercion." (*Id.* ¶ 122). She further alleges that Highgate and Raddison intentionally "fostered a culture of silence about the sex trade to protect their bottom line." (*Id.* ¶ 114).

Later in 2011, Plaintiff escaped Oscar and spent several weeks living alone and making her own decisions for the first time in nearly a year. (*Id.* ¶¶ 157, 160). This time was short lived, however, because Oscar tracked her down at her apartment and began to stalk her. (*Id.* ¶ 160). Plaintiff explains that when she looked for somewhere to run, the best option she could find was a friend's offer to put her in touch with Defendant Jamal Rashid who lived in Las Vegas and had the money and connections to protect Plaintiff from Oscar and Walter. (*Id.* ¶ 161). Rashid operated a nationwide escort service and Plaintiff began to work for him as a "Priority Girl."[3] (*Id.* ¶¶ 163–71).

Between 2011 and 2013, Plaintiff was required to perform frequent out calls in nearly every Las Vegas casino and hotel as one of Rashid's Priority Girls. (*Id.*). In particular, the escort service dispatcher sent Plaintiff to perform out calls for men staying in the Wynn, the Aria, the Cosmopolitan, and the Caesar's, dozens of times each. (*Id.* ¶ 175). Plaintiff alleges that Defendants Wynn, MGM, Aria, and Nevada Property 1, would have had access to all of

---

[3] "Priority Girls" were a group of eight to twelve women that belonged to Rashid and gave him 90% of every dollar they earned. (*Id.* ¶ 163).

the same clues showing her victimization that they had while she was being trafficked by Walter in 2010. (*Id.* ¶ 176).

Moreover, Plaintiff alleges that at Rashid's direction, she would offer kickbacks to employees and managers of Defendants. (*Id.* ¶ 179). Between 2011 and 2017, mostly concentrated during her time as a Priority Girl from 2011 through mid-2013, an unidentified manager at STK, a restaurant within the Cosmopolitan Resort, allowed Plaintiff to pick up men at the bar in exchange for kickbacks from Plaintiff. (*Id.* ¶¶ 181–83). During the same time period, hosts at XS Nightclub, located inside the Wynn, connected Plaintiff with men looking to buy sex. (*Id.* ¶¶ 185–90). Haze Nightclub, located inside the Aria, was another club that accepted kickbacks from her during 2011 through mid-2013. (*Id.* ¶¶ 192–95). Plaintiff alleges that each of the employees at these establishments either realized or should have realized that she was a victim of trafficking because the employees knew Plaintiff was expected to pick up far more clients than she would have needed or wanted if she were allowed to keep a meaningful portion of her earnings. (*Id.* ¶¶ 201–02).

In mid-2013, Defendant Rashid allegedly sold Plaintiff to a man in Wisconsin. (*Id.* ¶ 232). After a few days in Wisconsin, Plaintiff escaped and fled to New York City. (*Id.* ¶ 238). But Plaintiff struggled to make ends meet, so in early 2014 she called Walter, her old pimp, for help. (*Id.* ¶ 243). Plaintiff then moved back to Las Vegas and performed out calls and walked the carpet at Defendants Wynn, Aria, MGM, and Nevada Property 1. (*Id.* ¶¶ 247–248). Plaintiff again paid kickbacks to employees of STK and XS Nightclub. (*Id.* ¶ 248). In 2017, Plaintiff finally escaped sex trafficking for good. (*Id.* ¶¶ 259, 262).

Based on these allegations, Plaintiff asserts three claims against each Defendant: Count I, violation of § 1595 of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595; Count II, violation of Nevada's trafficking statute, Nev. Rev. Stat. ("NRS")

§ 41.1399; and Count III, intentional infliction of emotional distress, ("IIED"). (*See generally id.*).

## II.   LEGAL STANDARD

### A. FRCP 12(b)(2)

Federal Rule of Civil Procedure ("FRCP") 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2).  When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, a "plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  In determining whether personal jurisdiction exists, courts take the uncontroverted allegations in a complaint as true. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* Nev. Rev. Stat. § 14.065; *Galatz v. Eighth Jud. Dist. Court*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Minimum contacts may give rise to either general jurisdiction or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

414–16 (1984)).  Specific jurisdiction exists where claims "arise[] out of" or "relate[] to" the contacts with the forum, even if those contacts are "isolated and sporadic." *Id.*

### B.  FRCP 12(b)(6)

Dismissal is appropriate under FRCP 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  "However, material which is properly submitted as part of the complaint may be considered." *Id.*  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

1  **III.    DISCUSSION**

2    Defendants each argue that the FAC should be dismissed against them pursuant to FRCP

3  12(b)(6).  In addition, Defendant Radisson moves the Court to dismiss the claims against it

4  pursuant to FRCP 12(b)(2).  The Court first addresses whether it has jurisdiction over

5  Defendant Radisson pursuant to FRCP 12(b)(2) before moving on to Defendants' other

6  arguments.

7    **A.  FRCP 12(b)(2)**

8    Defendant Radisson moves to dismiss the case for lack of personal jurisdiction pursuant

9  to FRCP 12(b)(2) and for failure to state a claim.[4]  Defendant Radisson argues that this Court

10  lacks both general and specific personal jurisdiction over it because it is a Minnesota company

11  and the facts giving rise to the claim occurred in New York.

12    Here, Plaintiff admits that Radisson "is a Minnesota" entity, (FAC ¶ 4(b)), and that the

13  acts giving rise to her claim against Defendant Radisson occurred in New York. (Resp. to

14  Radisson 2:13–14, ECF No. 105).  Thus, the Court does not have specific jurisdiction over

15  Defendant Radisson because Plaintiff's claims do not arise out of or relate to the contacts with

16  the forum.

17    Plaintiff does argue, however, that the Court has general jurisdiction over Defendant

18  Radisson because it "consented to general jurisdiction in Nevada when it appointed a registered

19  agent [in the state]." (*Id.* 7:6).  Pursuant to Nevada state law, corporations must "appoint and

20  keep in this State a registered agent who resides or is located in this State, upon whom all legal

21  process" may be served. Nev. Rev. Stat. 14.020(1).  In support of her argument, Plaintiff cites a

22

23  _____

24  [4] Radisson filed its Motion to Dismiss, (ECF No. 103), on August 12, 2024.  Plaintiff's Response was due by
August 26, 2024, under LR 7-2(b).  Plaintiff did not file her Response until late on August 27, 2024, and did not

25  file a motion seeking leave to extend such deadline.  Defendant Radisson moves to strike Plaintiff's Response as
untimely.  Notwithstanding Plaintiff's untimely Response, the Court finds that it lacks personal jurisdiction over
Defendant Radisson.  However, the Court admonishes Plaintiff that any future late filings without leave will be
stricken.

recent U.S. Supreme Court case that held an "employee's lawsuit, which was premised on [a] Pennsylvania consent statute requiring out-of-state corporations to consent to personal jurisdiction in Pennsylvania courts as condition of registering to do business in the Commonwealth, did not violate the Due Process Clause." *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 122 (2023). Plaintiff argues that *Mallory* "revive[s] the theory that a corporation may consent to general jurisdiction in a state by appointing a registered agent for service of process there." (Resp. to Radisson 7:3–5). Plaintiff contends that in light of *Mallory*, Radisson consented to general jurisdiction in Nevada when it appointed a registered agent in the state, which it is required to by law. (*Id.* 7:6–7).

Defendant Radisson argues that Plaintiff ignores the established standard for determining whether a federal court has personal jurisdiction over an entity. (Radisson Reply 3:1–3); *see, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (noting that the inquiry for general personal jurisdiction is "whether that corporation's affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State."). Specific to this Court's analysis, the Ninth Circuit has explained that "federal courts should look first and foremost to a state's construction of its own statute to determine whether appointment of an agent for service of process is a sufficient basis for the exercise of personal jurisdiction over a foreign corporation."[5] *King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 575 (9th Cir. 2011). "[I]n the absence of broader statutory language or state court interpretations, the appointment of an agent for the service of process is, by itself, insufficient to subject foreign corporations to suits for business transacted elsewhere." *Id.*

The Nevada Supreme Court has not yet addressed whether NRS 14.020(1) automatically vests the court with personal jurisdiction over an entity who registers an agent with the state. However, the Nevada Supreme Court addressed a similar statute in *Freeman v. Second Judicial*

---

[5] In *King*, the word "foreign" is used to describe out-of-state corporations. *See generally id.*

*District Court ex rel. County of Washoe*. 1 P.3d 963 (Nev. 2000). In *Freeman*, the Court was asked to determine "if the appointment of the commissioner of insurance as an agent to receive service of legal process pursuant to NRS 680A.250,[6] by itself, subjects a non-resident insurance company to personal jurisdiction in Nevada." *Id*. at 964. The *Freeman* Court held that the statute "does not in itself subject a non-resident insurance company to the personal jurisdiction of Nevada Courts." *Id*. at 968. It acknowledged that "[m]any courts and legal authorities agree that the appointment of an agent to receive service of process subjects a non-resident corporation to personal jurisdiction in that state." *Id*. at 966. But in its acknowledgment, the *Freeman* Court relied on cases in which the statute at issue explicitly mentioned personal jurisdiction. *See id*. at 966–67. Moreover, the Court described in detail that if it held that the statute did subject the corporations to general jurisdiction, that decision would be contrary to the U.S. Supreme Court's developing case law. *See generally id*. The Court went on to state that "[o]ther courts and legal scholars have agreed that the mere act of appointing an agent to receive service of process, by itself, does not subject a non-resident corporation to general

---

[6] Nev. Rev. Stat. 680A.250 provides that:
  1. Before the commissioner may authorize it to transact insurance in this state, each insurer must appoint the commissioner, and his successors in office, as its attorney to receive service of legal process issued against the insurer in this state. The appointment must be made on a form as designated and furnished by the commissioner, and must be accompanied by a copy of a resolution of the board of directors or like governing body of the insurer, if incorporated insurer, showing that those officers who executed the appointment were authorized to do so on behalf of the insurer.
  2. The appointment must be irrevocable, must bind the insurer and any successor in interest to the assets or liabilities of the insurer, and must remain in effect as long as there is in force any contract of the insurer in this state or any obligation of the insurer arising out of its transactions in this state.
  3. Service of such process against a foreign or alien insurer must be made only by service thereof upon the commissioner.
  4. Service of such process against a domestic insurer may be made as provided in this section, or in any other manner provided by Nevada Rules of Civil Procedure.
  5. At the time of application for a certificate of authority the insurer shall file the appointment with the commissioner, together with a designation of the person to whom process against it served upon the commissioner is to be forwarded. The insurer shall provide written notice to the commissioner of any change of such a designation by a new filing.

jurisdiction." *Id.* at 968 (citations omitted).  Thus, it is clear to this Court that the Nevada Supreme Court would be unlikely to find that NRS 14.020(1) automatically vests the court with personal jurisdiction over an entity who registers an agent with the state when the relevant statute makes no mention of personal jurisdiction.

Plaintiff argues that *Mallory*, decided after *Freeman*, overturns the line of thinking in *Freeman*, but the Court disagrees.  As Defendant Radisson points out, *Mallory* addressed a Pennsylvania statute that "explicit[ly]" stated foreign corporations registered in the state "permit[ted] state courts to 'exercise general personal jurisdiction' over [the] registered foreign corporation, just as they can over domestic corporations." 600 U.S. at 134 (quoting 42 Pa. Cons. Stat. § 5301(a)(2)(i)).  *Mallory* is therefore distinguishable from the present case in an important way: the Pennsylvania statue at issue in *Mallory* explicitly mentioned that by registering an agent in the state, an entity was consenting to personal jurisdiction, whereas NRS 14.020(1) is silent as to personal jurisdiction.  Thus, this Court finds it lacks personal jurisdiction over Defendant Radisson.

Accordingly, the claims against Defendant Radisson are DISMISSED pursuant to FRCP 12(b)(2) for lack of personal jurisdiction.  The Court dismisses the claims against Defendant Radisson without prejudice so that Plaintiff may bring her claims in the appropriate forum if she so wishes.

### B. Rule 12(b)(6) Claim

Defendants Wynn, The Light Group, Highgate, STK, The One Group, The One Group Hospitality, MGM, Aria, and Nevada Property 1, each move to dismiss the FAC on the basis that Plaintiff's claims based on events pre-dating November 13, 2013, are time barred, and because Plaintiff fails to state a claim. (Wynn MTD 15:3–5, ECF No. 69); (The Light Group MTD 16:18–17:9, ECF No. 70); (Highgate MTD 7:23–26, ECF No. 71); (STK, The One Group, The One Group Hospitality MTD 8:7–9:11, ECF No. 72); (MGM, Aria, Nevada

1    Property 1 MTD 12:3–9, 19:12–13, ECF No. 73).  The Court begins by addressing Plaintiff's
2    state law claims: a violation of NRS § 41.1399 and IIED.

3                    **1.  NRS § 41.1399 and IIED**

4                Defendants argue that Plaintiff's state law claims are completely time-barred.  Indeed,
5    NRS § 41.1399 is subject to, at most, a three-year statute of limitations. *See* Nev. Rev. Stat. §
6    11.190(3)(a) (establishing a three-year limitations period for "[a]n action upon a liability
7    created by statute"); *id.* § 11.190(4)(e) (establishing a two-year limitations period for "[a]n
8    action to recover damages for injuries to a person . . . caused by the wrongful act or neglect of
9    another").  Accordingly, the three-year limitations period began to run at the latest, in 2017,
10   when Plaintiff became free from trafficking, and thus expired in 2020.  NRS § 41.1399
11   expressly provides for tolling for periods of "disability," but Plaintiff does not plead any facts
12   in her FAC to support such a tolling.[7]  As a result, this claim is time-barred.

13               Likewise, Plaintiff's IIED claim is subject to a two-year statute of limitations because
14   NRS § 11.190(4)(e) establishes a two-year limitations period for "[a]n action to recover
15   damages for injuries to a person . . . caused by the wrongful act or neglect of another."
16   Accordingly, the two-year statute of limitations began to run in 2017 and concluded in 2019.
17   Thus, Plaintiff's IIED claim is time-barred.

18               In Plaintiff's Omnibus Response to Defendants, Plaintiff fails to respond to the
19   Defendants' arguments that her state law claims are time-barred or that she failed to state a
20   claim for which relief can be granted.  Indeed, Plaintiff's Response focuses solely on her
21   TVPRA claim against the Defendants and how equitable tolling should apply to that claim. (*See*
22   *generally* Resp.).  Pursuant to LR 7-2(d), "[t]he failure of an opposing party to file points and

---

[7] Nev. Rev. Stat. § 41.1399(6) states:
> The statute of limitations for an action brought under this section is tolled for any period during
> which the plaintiff was under a disability. For the purposes of this subsection, a plaintiff is under
> a disability if the plaintiff is insane, a person with an intellectual disability, mentally
> incompetent or in a medically comatose or vegetative state.

1    authorities in response to any motion . . . constitutes a consent to the granting of the motion."

2    *See Frederick v. Fed. Nat. Mortg. Ass'n*, Case No. 2:11-cv-00522-GMN, 2014 WL 358399, at

3    *3 (D. Nev. Jan. 31, 2014).  Here, Plaintiff failed to file any points and authorities in opposition

4    and therefore consented to the dismissal of her state law claims against Defendants.  The Court

5    treats such a failure to respond as a waiver of the claims and abandonment of the issues.  Thus,

6    Plaintiff's state law claims, a violation of Nevada's trafficking statute, NRS § 41.1399, and

7    IIED, are DISMISSED with prejudice as to the Defendants who filed an MTD because they are

8    untimely and because Plaintiff seemingly consented to their dismissal.

9                          **2.  Statute of Limitations for TVPRA**

10         The thrust of Defendants' motions is that Plaintiff's complaint, which was filed

11   approximately 6 years after she escaped sex trafficking and which seeks recovery for acts that

12   occurred as long as 13 years ago, is largely time-barred.  In response, Plaintiff argues that

13   Defendants' conduct, which caused her emotional distress after being sexually abused, is severe

14   enough to have limited her ability to exercise her rights and the statute of limitations on her

15   claims should be equitably tolled. (Omnibus Resp. 18:11, 19:15–19).

16         Courts may dismiss a claim as time-barred only if the running of the statute of limitation

17   is "apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997

18   (9th Cir. 2006) (quotation omitted).  Thus, courts cannot dismiss a claim unless the plaintiff

19   undoubtedly fails to allege any set of facts proving the timeliness of the claim. *United States v.*

20   *Page*, 116 F.4th 822, 825–26 (9th Cir. 2024).

21         The TVPRA requires all claims to be brought within 10 years after either the cause of

22   action arose or the victim reaches 18 years of age, whichever is later. 18 U.S.C. § 1595(c).

23   Here, Plaintiff was over the age of 18 at the time of the alleged trafficking activity.  Thus, as it

24   relates to each Defendant, Plaintiff had to assert her TVPRA claim "not later than . . . ten years

25   after the cause of action arose." *Id.*  Plaintiff filed her FAC on November 13, 2023.

Accordingly, if Plaintiff's causes of action arose before November 13, 2013, they would be time-barred. It is apparent on the face of Plaintiff's FAC that the limitation period expired on her TVPRA claims as to some Defendants. The Court analyzes whether Plaintiff's claims for each Defendant are time-barred and whether equitable tolling is warranted in this matter.

### a. Whether Plaintiff's Claims are Time-Barred

Defendant Light Group, operator of Haze Nightclub located inside the Aria, argues that Plaintiff's claims against it are clearly time-barred. (Light Group MTD 7:21–22). The facts relevant to Plaintiff's claim against Defendant Light Group occurred from 2011 to mid-2013 when Plaintiff would allegedly pay kickbacks to hosts at Haze Nightclub. (FAC ¶¶ 192–95). Since Plaintiff's alleged trafficking activity at Haze Nightclub ended in mid-2013, she had to assert her TVPRA claim by mid-2023. Plaintiff's claim against Defendant Light Group, however, was not asserted until November 13, 2023, and it is therefore untimely. *See* 18 U.S.C. § 1595(c).

Defendant Highgate similarly argues that Plaintiff's TVPRA claim against it is time-barred. (Highgate MTD 7:23–26, ECF No. 71). The facts relevant to Plaintiff's claims against Defendant Highgate occurred beginning in early 2011 and went on for four months. (*See* FAC ¶ 98–106). Thus, Plaintiff would have had to assert her claims against Defendant Highgate by early to mid-2021. Plaintiff's claims against Defendant Highgate are therefore time-barred.

As to the remaining Defendants who joined in the motion—STK, The One Group, The One Group Hospitality, MGM, Aria, and Nevada Property 1—not all of Plaintiff's claims are clearly time barred. Plaintiff brings allegations against each of these Defendants ranging from 2010–2017. (*See generally* FAC). Thus, Plaintiff's TVPRA claim against these Defendants is barred as it pertains to events occurring before November 13, 2013, but not after.

1

### b. Whether Equitable Tolling Applies

2      Next, the Court turns to whether Plaintiff's claims are subject to equitable tolling and

3 finds that Plaintiff has not alleged facts to support equitable tolling in her FAC.  Federal

4 statutes of limitation are presumptively subject to equitable tolling. *Arellano v. McDonough*,

5 598 U.S. 1, 6 (2023).  Equitable tolling requires a plaintiff to show "(1) that [she] has been

6 pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her]

7 way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S.

8 250, 255 (2016) (quotation omitted).  A plaintiff must demonstrate that she has been

9 "reasonably diligent in pursuing [her] rights not only while an impediment to filing caused by

10 an extraordinary circumstance existed, but before and after as well, up to the time of filing."

11 *Smith v. Davis*, 953 F.3d 582, 598–99 (9th Cir. 2020) (*en banc*).  And "it is only when an

12 extraordinary circumstance prevented a petitioner acting with reasonable diligence from

13 making a timely filing that equitable tolling may be the proper remedy." *Id.* at 600; *see e.g.*,

14 *Levin v. Sarah Lawrence Coll.*, No. 23-CV-10236 (LJL), 2024 WL 4026966 *17 (S.D.N.Y.

15 Sept. 3, 2024) (holding equitable tolling was not applicable where plaintiff brought a TVPRA

16 claim nine years after she escaped trafficking because she was no longer under the control of

17 her trafficker).  "The burden of alleging facts which would give rise to tolling falls upon the

18 plaintiff." *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993).

19      Plaintiff alleges that "between her fear of her traffickers, her damaged self-image, her

20 trauma-primed emotional responses, and her impoverished living situation, [she] spent years

21 unable even to conceive of taking any action against those who gained from her abuse." (FAC ¶

22 268).  Moreover, in Plaintiff's Omnibus Response, she alleges that "her emotional distress from

23 being sexually abused is severe enough to have limited her ability to exercise her rights."

24 (Omnibus Resp. 19:15–16).  While the Court sympathizes with Plaintiff, these allegations do

25 not demonstrate extraordinary circumstances that prevented her from timely filing.  Moreover,

Plaintiff does not describe what efforts she took to diligently pursue her claim. Plaintiff argues that "the case law overwhelmingly favors allowing TVPRA claimants to survive a motion to dismiss and develop the record on their tolling arguments." (*Id.* 19:10–11) (citing to nonbinding case law). But because the Court will give Plaintiff leave to amend her First Amended Complaint, it need not make a determination on that issue at this stage.

Thus, the Court must dismiss as untimely her TVPRA claims based on events that occurred prior to November 2013, against Defendants. However, the Court shall give Plaintiff leave to amend her Complaint if she can allege facts to support equitable tolling as to each, individual Defendant. Because the Court grants leave to amend, it will also address the Defendants' other arguments as to why Plaintiff's TVPRA claims should be dismissed.

### 3. TVPRA

The TVPRA imposes both criminal and civil penalties for sex trafficking. Congress enacted the Trafficking Victims Protection Act of 2000 ("TVPA") to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers, and to protect their victims." *Ditullio v. Boehm*, 662 F.3d 1091, 1094 (9th Cir. 2011) (quoting Pub. L. No. 106–386, 114 Stat. 1464 (Oct. 28, 2000) (codified as amended at 18 U.S.C. § 1589 *et seq*.)). "Congress has repeatedly reauthorized and amended the TVPRA to expand coverage—most significantly, by creating a civil remedy against traffickers and then extending liability to those that benefit from what they should have known was a trafficking venture." *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 763 (C.D. Cal. 2024).

Two provisions of the TVPRA are relevant to this case. First, 18 U.S.C. § 1591 provides for *criminal* penalties for sex trafficking:

(a) Whoever knowingly—
(1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Second, 18 U.S.C. § 1595 sets forth the standard for *civil* liability under the TVPRA. That section currently provides:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). Thus, § 1595 provides trafficking victims with a private right of action to pursue claims against perpetrators of trafficking as defined in § 1591(a) or those who knowingly financially benefit from trafficking ("beneficiary liability"). *Doe v. Mindgeek*, 558 F. Supp. 3d 828, 835 (C.D. Cal. 2021).

As a threshold matter, Plaintiff plausibly alleges that she is a victim of sex trafficking under 18 U.S.C. § 1591(a). A victim is sex trafficked if they engaged in commercial sex acts either while under 18 years of age or due to force, threat of force, fraud, or coercion. 18 U.S.C. § 1591(a). Plaintiff plausibly alleges that her traffickers used force, threats of force, and coercion to make her engage in commercial sex acts. Thus, she is a "victim" with standing to sue under the TVPRA.

The TVPRA's civil provision, § 1595, creates two routes to liability, one for "perpetrator[s]" as defined in the criminal provision, and another for those who "knowingly

benefit . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." But because the term "perpetrator" includes anyone who is criminally liable under either § 1591(a)(1) or § 1591(a)(2), there is effectively three routes to civil liability: perpetrator liability under § 1591(a)(1), perpetrator liability under § 1591(a)(2), and beneficiary liability under § 1595. The Court first addresses beneficiary liability under 18 U.S.C. § 1595(a), before moving on to perpetrator liability under § 1591(a)(1) and/or § 1591(a)(2).

### a. Beneficiary Liability under § 1595(a)

"To prevail on a theory of beneficiary liability under the TVPRA, a plaintiff must allege that the defendant '(1) knowingly benefitted, (2) from participation in a venture [], (3) which they knew or should have known was engaged in conduct that violated the TVPRA.'" *A.B. v. Extended Stay America, Inc.*, 2023 WL 5951390, *5 (W.D. Wash. Sept. 13, 2023) (citing *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022)); *see also* 18 U.S.C. § 1595(a).

### i. Knowingly Benefit

The first question is whether Plaintiff has plausibly alleged that Defendants knowingly benefited pursuant to § 1595(a). Plaintiff argues that her sex work led to each Defendant receiving financial or other valuable benefits, "including present and future room rentals, future patronage and gambling revenues, happier guests, and, [in the case of some Defendants,] lower costs thanks to the supplemental employee income provided by tacitly sanctioned kickbacks." (Resp. 16:25–28); (*See generally* FAC). Drawing every inference in Plaintiff's favor, as the Court must at the motion to dismiss stage, it is plausible that the casinos knowingly experienced increased visitation, revenues, and guest satisfaction, and also knew that Plaintiff was engaged in prostitution. If tied to participation in a venture, "the benefit need not take the form of profits that are the specific result of a sex-trafficking venture." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 564 (7th Cir. 2023) (simplified). Thus, this prong is sufficiently pled.

### ii. Participation in a Venture

The next question is whether Plaintiff has plausibly alleged that Defendants participated in a venture. Defendants argue that Plaintiff has not shown any venture between them and those involved in her trafficking. Plaintiff argues that each of Defendants' businesses is a commercial venture, which satisfies this prong of the test.

Participation in a venture is "an undertaking or enterprise involving risk and potential profit." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021). The Eleventh Circuit has held that a "participation in a venture" should be interpreted more broadly for § 1595(a) purposes than it is in the criminal part of the statute. *Id.* (explaining that the Court cannot read the more demanding definition of "participation of a venture" found in § 1591(e)(4) into § 1595). The Seventh Circuit and another court in the District of Nevada have explained that for § 1595(a) purposes, the defendant's participation in the venture need not directly relate to the venture's trafficking activities. *Salesforce.com, Inc.*, 76 F.4th at 554 (cleaned up); *Tyla D. v. MGM Resorts Int'l*, No. 2:24-CV-00698-APG-BNW, 2024 WL 4839744 *3 (D. Nev. Nov. 19, 2024). A venture under § 1595 can be an isolated act of sex trafficking, but "it can also be a business whose primary focus is not on sex trafficking." *Salesforce.com, Inc.*, 76 F.4th at 554. It can even be commercial participation in a "commercial venture like running or expanding a business." *Id.* (cleaned up). "Operating a casino is a commercial venture and it is reasonable to infer that operating a hotel and casino necessarily involves many persons and entities taking part 'in a common undertaking or enterprise involving risk and potential profit.'" *Tyla D.*, 2024 WL 4839744 at *3 (quoting *Red Roof Inns*, 21 F.4th at 725).

Here, Defendants were operating hotels, casinos, or businesses within hotels and casinos. Given that the Court can interpret more broadly what satisfies "participation in a venture" under § 1595(a), the Court finds that Plaintiff has sufficiently pled that Defendants were participating in a venture. Thus, this prong of the analysis survives a motion to dismiss.

### iii.  Knew or Should Have Known

The last question is whether Plaintiff has plausibly alleged that Defendants knew, or should have known, that their venture engaged in acts in violation of § 1595(a).  Whether a participant in a venture knew or should have known that the venture engaged in trafficking imposes a negligence standard. *Ratha*, 35 F.4th at 1177 ("The phrase 'knew or should have known' usually connotes negligence," which is "a less culpable mental state than actual knowledge or recklessness." (cleaned up)).  Another Court in this District found, and this Court agrees, that "[i]t is not enough to establish a defendant's knowledge of general commercial sex taking place at its property." *See Tyla D.*, 2024 WL 4839744 *4.  Instead, the complaint must plausibly allege that the defendant knew, or should have known, of a venture that involved sex trafficking by force, threat of force, fraud, or coercion. *See A.B. v. Interstate Mgmt. Co., LLC*, –— F. Supp. 3d ——, 2024 WL 3905482, at *6 (D. Or. Aug. 22, 2024).  To establish this prong, valid TVPRA claims often involve a defendant either directly supporting a sex trafficker or forming a tacit agreement with the trafficker through a continuous business relationship.[8]

Here, Plaintiff has plausibly alleged that some Defendants, but not all, should have known that themselves or their employees were violating § 1595(a).  Plaintiff's FAC makes blanket allegations that employees of all Defendants accepted "kickbacks" or some form of under-the-table money for connecting Plaintiff with clients interested in purchasing sex.  But Plaintiff pleads specific allegations as to only three of the Defendants: The Light Group, Wynn, and STK.  The Court finds that this type of business relationship—the acceptance of

---

[8] *See e.g.*, *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (hotel staff rented rooms to trafficker away from other guests and instructed johns to hurry up as they come and go); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108-TWT, 2023 WL 5621913, at *2 (N.D. Ga. Aug. 30, 2023) (hotel employees zip-tied the crash bar of a door to keep it from locking so that commercial sex purchasers could enter and exit); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (hotel operator and trafficker exchanged high fives and spoke of "getting this thing going again" when there were overt signs of sex trafficking); *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 6120682, at *4 (N.D. Cal. Sept. 18, 2023) (hotels had a "continuous business relationship" of renting rooms to traffickers).

kickbacks—between The Light Group, Wynn, and STK employees satisfies the knowledge prong of the analysis for the purposes of the motion to dismiss stage. As to the other remaining Defendants, Plaintiff has not pled facts with enough specificity to sufficiently allege that they knew, or should have known, that the casinos themselves or their employees engaged in sex trafficking. Thus, the Court finds Plaintiff has sufficiently pled this factor as to Defendants The Light Group, Wynn, and STK, but not to the remaining Defendants joining in the motion to dismiss.

In sum, Plaintiff has sufficiently pled that Defendants The Light Group, Wynn, and STK may be liable under beneficiary liability. Plaintiff has not sufficiently pled that Defendants Highgate, MGM, Nevada Property 1, The One Group, the One Group Hospitality, and Aria may be liable under the TVPRA. As such, Plaintiff shall have leave to amend her beneficiary claim as to the latter Defendants.

### b. Perpetrator Liability under § 1591(a)(1) and/or § 1591(a)(2)

To state a claim for perpetrator liability, a plaintiff must plead facts showing, among other things, that a defendant knowingly

> recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits . . . a person . . . knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act.

18 U.S.C. § 1591(a).

Plaintiff alleges that each Defendant violated both provisions of § 1591 of the TVPRA. A "perpetrator" of sex trafficking can be either a direct violator under § 1591(a)(1) or a participant under § 1591(a)(2), but both require actual knowledge of the trafficking under § 1591(e)(4). *Acevedo*, 713 F. Supp. 3d at 766 (citing *Geiss v. Weinstein*, 383 F. Supp. 3d 156, 167, n. 3 (S.D.N.Y. 2019).

As discussed above, Plaintiff failed to sufficiently plead a negligence standard that Highgate, MGM, Nevada Property 1, The One Group, the One Group Hospitality, and Aria, knew or should have known the ventures engaged in sex trafficking. Thus, Plaintiff has likewise failed to plead that these Defendants had actual knowledge as required under § 1591(a).

Moving on to Defendants The Light Group, Wynn, and STK, Plaintiff must adequately plead that each of these Defendants knowingly and in interstate or foreign commerce: (1) recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person; (2) "knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud. . . or any combination of such means will be used"; (3) "to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591. In sum, Plaintiff alleges that Defendants Wynn and The Light Group's event hosts, and STK's bar manager, "provided" Plaintiff to engage in sex trafficking when those employees directed Plaintiff to tables within their establishment full of men the employees knew wanted to purchase commercial sex. (*See* FAC ¶¶ 182–84, 189–91, 194–195). Plaintiff does not plead facts that establish these Defendants had actual knowledge that she was being trafficked (by force, threat of force, fraud, or coercion), only that they knew she engaged in commercial sex work, which is not enough to establish a claim under the TVPRA. *Tyla D.*, 2024 WL 4839744 *4; *A.B. v. Interstate Mgmt. Co., LLC*, No. 3:23-CV-00388-IM, 2024 WL 3905482 *6 (D. Or. Aug. 22, 2024), *A.B. v. Wyndham Hotels & Resorts, Inc.*, 532 F. Supp. 3d 1018, 1027 (D. Or. 2021), and the cited case *Tyla D. v. MGM Resorts Int'l*, No. 2:24-CV-00698-APG-BNW, 2024 WL 4839744 *4 (D. Nev. Nov. 19, 2024). Therefore, the Court finds Plaintiff has not pled sufficient facts to establish perpetrator liability under § 1951(a). But, Plaintiff shall be given leave to amend her perpetrator liability claims as to each Defendant.

/ / /

### 4.   Motion to Take Judicial Notice

Plaintiff requests that the Court take judicial notice of a book published in October 2024, entitled "Vegas Concierge: Sex Trafficking, Hip Hop, and Corruption in America."  She argues that statements by former Las Vegas police officials in the book show the plausibility of Plaintiff's TVPRA claims against casinos.  Defendants argue that the excerpts Plaintiff presents are not appropriate for judicial notice and are irrelevant.

Federal Rule of Evidence 201(b) permits a court to judicially notice "a fact that is not subject to reasonable dispute" because it either "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  While the Court may take judicial notice of the fact that the book was published, the book's contents are neither generally known in this Court's territorial jurisdiction nor able to be accurately and readily determined from a source whose accuracy cannot reasonably be questioned.  Thus, the Court DENIES Plaintiff's Motion to Take Judicial Notice of the book's contents.

### 5.   Shotgun Pleading

Pursuant to FRCP 8(a)(2), a pleading that states a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While the pleading standard under Rule 8 "does not require 'detailed factual allegations,'. . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678.  The pleading must contain more than "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557) (quotations omitted)).

Pleadings that seek to "overwhelm defendants with an unclear mass of allegations and make it difficult to impossible for the defendants to make informed responses to the plaintiff's allegations are considered 'shotgun' pleadings." *See Underwood v. O'Reilly Auto Parts, Inc.*,

671 F. Supp. 3d 1180, 1188 (D. Nev. 2023).  Another type of "shotgun" pleading is a complaint that asserts claims against "multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *See Nissen v. Lindquist*, No. C16-5093 BHS, 2017 WL 26843, at \*2 (W.D. Wash. Jan. 3, 2017) (quoting *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321–23 (11th Cir. 2015)).

Defendants MGM, Aria, and Nevada Property 1, argue that Plaintiff impermissibly relies on shotgun pleadings because the FAC makes certain allegations against all Defendants collectively and fails to specifically plead claims against them. (MGM, Aria, Nevada Property 1 MTD 4:26–5:21).  To these Defendants' point, the allegations describing the sex trafficking of Plaintiff are collectively pled against all Defendants and do not contain a high level of specificity as to each Defendant's conduct. (*See generally* Compl.).  Plaintiff has, however, identified specific locations where the alleged trafficking occurred, a time frame for the allegations, and factual allegations describing her victimization.  Because this Court dismisses the FAC on other grounds, this Court need not reach a determination on the issue of "shotgun" pleading.  To the extent Plaintiff intends to file an amended complaint, Plaintiff is instructed to plead her interactions with each Defendant with sufficient specificity so that Defendants may defend against her claims.

## IV.    <u>CONCLUSION</u>

**IT IS HEREBY ORDERED** that Defendant Radisson's Motion to Dismiss, (ECF No. 103), is **GRANTED**.  Plaintiff's claims against Defendant Radisson are **DISMISSED** without prejudice so that Plaintiff may bring her claims in the appropriate forum if she so wishes.

**IT IS FURTHER ORDERED** that Defendants Wynn, Aria, STK, Highgate, MGM, Nevada Property 1, The One Group, the One Group Hospitality, and the Light Group's Motions to Dismiss (ECF Nos. 69–73) are **GRANTED**.  Plaintiff's state law claims (NRS § 41.1399 and IIED) are **DISMISSED** with prejudice as to the Defendants who filed a motion to dismiss.

Plaintiff's TVPRA claims against Defendants are **DISMISSED** without prejudice and Plaintiff is given leave to amend pursuant to this Order.

**IT IS FURTHER ORDERED** that Plaintiff shall have 21 days from the date of this Order to file a second amended complaint.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Take Judicial Notice, (ECF No. 107), is **DENIED**.

**DATED** this __20__ day of December, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court