1

2

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

3

4

C.C.,

5                    Plaintiff,

          vs.

6

JAMAL F. RASHID, *et al.*,

7

                   Defendants.

8

Case No.: 2:23-cv-02056-GMN-BNW

**ORDER REGARDING SECOND
MOTIONS TO DISMISS**

9        Pending before the Court are six Motions to Dismiss filed by Defendants Radisson

10   Hospitality, Inc., (ECF No. 130), Highgate Hotels, L.P., (ECF No. 131), Wynn Las Vegas,

11   LLC, (ECF No. 132), MGM Resorts International, Aria Resort & Casino, LLC, MGM Grand

12   Hotel, LLC, and Nevada Property 1, LLC, ("MGM Defendants") (ECF No. 133), The Light

13   Group, LLC, (ECF No. 134), STK Las Vegas, LLC, The One Group, LLC, and The One Group

14   Hospitality, Inc., ("STK Defendants") (ECF No. 135).[1]  Plaintiff filed Responses, (ECF Nos.

15   136, 143, 147, 148, 149, 150), to which Defendants replied, (ECF Nos. 144, 145, 151, 152, 153,

16   155).  The STK Defendants also filed a Joinder, (ECF No. 154), to both Wynn's Reply, (ECF

17   No. 151), and the MGM Defendants' Reply, (ECF No. 152).  Lastly, Wynn filed a Motion for

18   Leave to File Notice of Supplemental Authority, (ECF No. 159).  Plaintiff did not file a

19   Response, and the deadline to do so has passed.

20        For the reasons discussed below, the Court GRANTS Defendants Radisson and The

21   Light Group's Motions to Dismiss.  The Court GRANTS, in part, and DENIES, in part, the

22

23

---

24   [1] The Court notes that Defendants Rashid and Tao Group Operating, LLC did not file Motions to Dismiss.  The
     deadline for Rashid to file an Answer or otherwise respond to Plaintiff's Second Amended Complaint, (ECF No.

25   125), has passed.  The deadline for Tao Group Operating, LLC to Answer or respond is currently set for July 12,
     2025.  At this time, the Court's conclusions in this Order do not apply to Plaintiff's claims against Defendants
     Rashid or Tao Group Operating, LLC.

Motions to Dismiss filed by Wynn, the MGM Defendants, and the STK Defendants. Further, because the parties stipulated to dismissing Highgate from this action while its Motion to Dismiss was pending, Highgate's Motion to Dismiss is DENIED as MOOT. (*See* Stip. Dismiss, ECF No. 162); (*see* Order re Stip. Dismiss, ECF No. 163). Lastly, the Court GRANTS Wynn's Motion for Leave to File Notice of Supplemental Authority.[2]

## I.    BACKGROUND

This action arises from Defendants' alleged involvement with Plaintiff being sex trafficked at their establishments. (*See generally* Second Am. Compl. ("SAC"), ECF No. 125). The Court incorporates by reference the detailed factual background stated in its Order Granting Defendants' Motions to Dismiss the First Amended Complaint, (ECF No. 115). Accordingly, the Court only provides facts that are relevant to the pending Motions to Dismiss.

This Court granted Radisson's Motion to Dismiss for lack of personal jurisdiction. (*See* Order re First Mots. Dismiss, ECF No. 115). It further granted the other Defendants' Motions to Dismiss for failure to state a claim but gave Plaintiff leave to amend her Trafficking Victims Protection Reauthorization Act ("TVPRA") claims and to allege facts that support equitable tolling. (*See id.*). Plaintiff then filed her SAC asserting claims for violation of 18 U.S.C. § 1595, § 1591(a), and § 1591(b). Plaintiff's SAC adds new Defendants: Desert Palace LLC,[3] MGM Grand Hotel, LLC, and Tao Group Operating, LLC. The moving Defendants argue that all claims asserted against them in the SAC should be dismissed.

---

[2] Under Local Rule 7-2(g), "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." Wynn filed a Motion for Leave to File Notice of Supplemental Authority, informing the Court about an order in the District of Nevada that was decided after the parties submitted their briefing on this Motion. (Mot. Leave, ECF No. 159). Plaintiff did not file a Response, or otherwise object to the Motion for Leave. Because Plaintiff does not oppose, and for good cause appearing, the Court GRANTS the Motion for Leave to File Notice of Supplemental Authority. *See* LR 7-2(d).

[3] Defendant Desert Palace LLC was terminated as a party after Plaintiff filed a Notice of Voluntary Dismissal, (ECF No. 160), as to the party.

## II.    LEGAL STANDARD

Dismissal is appropriate under Federal Rule Civil Procedure ("FRCP") 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.    DISCUSSION

Defendants each argue that the SAC should be dismissed against them for failure to state a claim. In addition, Radisson moves the Court to dismiss the claims against it because the

Court previously dismissed the party for lack of personal jurisdiction. The Court first addresses Radisson's argument before moving to the other moving Defendants' arguments.

### A. Radisson

Radisson moves to dismiss the SAC against it, arguing that Plaintiff is prohibited from bringing a claim against it because the Court already dismissed Radisson for lack of personal jurisdiction under FRCP 12(b)(2). (*See generally* Radisson Mot. Dismiss, ECF No. 130). Indeed, the Court dismissed Radisson as a party in its Order re Defendants' First Motions to Dismiss, finding that it lacks personal jurisdiction over Radisson. (*See* Order re First Mots. Dismiss 10:13–14). This Court dismissed the claims against Radisson accordingly and did so "without prejudice so that Plaintiff may bring her claims in the appropriate forum if she so wishes." (*Id*. 10:16–18)

Instead of filing her claims against Radisson in the appropriate forum, Plaintiff re-pled her TVPRA claims against Radisson in her SAC. (*See generally* SAC). Plaintiff does not include any new allegations relating to the personal jurisdiction analysis. Instead, she asserts that she "recognizes that the Court has dismissed her claims against Defendant Radisson . . . [and] continues to list Radisson in this Second Amended Complaint out of an abundance of caution, solely to ensure that the personal jurisdiction issue remains preserved for appeal." (SAC ¶ 4(b) n.1); (*See generally* Resp. to Radisson, ECF No. 136).

Plaintiff argues that under Ninth Circuit precedent, the rule is not clear as to when a plaintiff—having lost some of her claims on a motion to dismiss—can safely omit those claims from an amended complaint without forfeiting her appeal. (*See generally* Resp. to Radisson). The Ninth Circuit's original rule, was that "a plaintiff waives all claims alleged in a dismissed complaint which are not realleged in an amended complaint." *Forsyth v. Humana, Inc*., 114 F.3d 1467, 1474 (9th Cir. 1997). The Ninth Circuit has softened this rule: "For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in

1    a subsequent amended complaint to preserve them for appeal.  But for any claims voluntarily

2    dismissed, we will consider those claims to be waived if not repled." *First Resort, Inc. v.*

3    *Herrera*, 860 F.3d 1263, 1274 (9th Cir. 2017).

4         Here, the Court dismissed Plaintiff's claims against Radisson based on personal

5    jurisdiction without prejudice. (*See* Order re First Mots. Dismiss 10:16–18).  Thus, the Court

6    understands Plaintiff's caution in repleading a claim against Radisson because the Radisson

7    claims were not dismissed *with* prejudice and without leave to amend but they also were not

8    dismissed voluntarily.  Plaintiff's uncertainty about the appealability of her claims against

9    Radisson, however, does not change the Court's decision to dismiss Radisson as a party.

10        Accordingly, the Court GRANTS Radisson's Motion to Dismiss.  The claims against

11   Radisson are DISMISSED with prejudice for lack of personal jurisdiction.  The Court will not

12   exercise its discretion, however, to hold Plaintiff in civil contempt, as suggested by Radisson,

13   because the Court finds that Plaintiff had a good faith basis for naming Radisson in the SAC.

14   (*See* Radisson Mot. Dismiss 4:5–11).

15   **B. TVPRA Claims Against Remaining Defendants**

16        Defendants Wynn, MGM Resorts, Aria, MGM Grand, Nevada Property 1, The Light

17   Group, STK, The One Group, and The One Group Hospitality each move to dismiss the SAC

18   arguing that: (1) Plaintiff's TVPRA claims are largely time barred, (2) Plaintiff is not entitled to

19   equitable tolling, and (3) she otherwise fails to state a claim. (*See generally* Wynn Mot.

20   Dismiss, ECF No. 132); (MGM Defendants Mot. Dismiss, ECF No. 133); (The Light Group

21   Mot. Dismiss, ECF No. 134); (STK Defendants Mot. Dismiss, ECF No. 135).  The Court

22   begins by discussing the timeliness of Plaintiff's claims and whether she is entitled to equitable

23   tolling before addressing additional timeliness arguments brought in Plaintiff's Response.  The

24   Court will then turn to the merits of Plaintiff's claims.

25

1

### 1. Timeliness and Equitable Tolling

The TVPRA requires all claims to be brought within 10 years after either the cause of action arose or the victim reaches 18 years of age, whichever is later. 18 U.S.C. § 1595(c). Here, Plaintiff was over the age of 18 at the time of the alleged trafficking activity.  Thus, as it relates to each Defendant, Plaintiff had to assert her TVPRA claim "not later than . . . ten years after the cause of action arose." *Id.*  Plaintiff initiated this lawsuit against all moving Defendants, except MGM Grand, on November 13, 2023.  Plaintiff initiated this lawsuit against MGM Grand on January 27, 2025, when she added it as a named Defendant in her SAC. Accordingly, Plaintiff's causes of action against MGM Grand that arose before January 27, 2015, and her causes of action against the other moving Defendants that arose before November 13, 2013, are time-barred under the applicable statute of limitations unless a tolling doctrine applies.

This Court previously held that many of Plaintiff's claims are untimely.  Indeed, the Court held that Plaintiff's TVPRA claim against Light Group are untimely. (Order re First Mots. Dismiss 13:11–18).  It also held that some, but not all, of Plaintiff's TVPRA claims are clearly time barred as to STK, The One Group, The One Group Hospitality, MGM Resorts, Aria, and Nevada Property 1.  The Court specified that Plaintiff's TVPRA claims against these Defendants are barred as they pertain to events occurring before November 13, 2013, but not after.  The Court considered whether Plaintiff's claims were subject to equitable tolling and found that Plaintiff did not allege facts to support equitable tolling in her FAC. (Order re First Mots. Dismiss 14:2–15:10).  The Court gave Plaintiff leave to amend to assert facts for equitable tolling if such facts were available. (*Id.* 15:6–7).  Now the Court turns to whether Plaintiff's claims, as pled in the SAC, are subject to equitable tolling.

Federal statutes of limitation are presumptively subject to equitable tolling. *Arellano v. McDonough*, 598 U.S. 1, 6 (2023).  Equitable tolling requires a plaintiff to show "(1) that [she]

1  has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in

2  [her] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577

3  U.S. 250, 255 (2016) (quotation omitted).  A plaintiff must demonstrate that she has been

4  "reasonably diligent in pursuing [her] rights not only while an impediment to filing caused by

5  an extraordinary circumstance existed, but before and after as well, up to the time of filing."

6  *Smith v. Davis*, 953 F.3d 582, 598–99 (9th Cir. 2020) (*en banc*).  And "it is only when an

7  extraordinary circumstance prevented a petitioner acting with reasonable diligence from

8  making a timely filing that equitable tolling may be the proper remedy." *Id.* at 600; *see, e.g.*,

9  *Levin v. Sarah Lawrence Coll.*, No. 23-CV-10236 (LJL), 2024 WL 4026966 *17 (S.D.N.Y.

10  Sept. 3, 2024) (holding equitable tolling was not applicable where plaintiff brought a TVPRA

11  claim nine years after she escaped trafficking because she was no longer under the control of

12  her trafficker).  That equitable tolling is applied in "extraordinary circumstances necessarily

13  suggests the doctrine's rarity, and the requirement that extraordinary circumstances stood in

14  [plaintiff's] way suggests that an external force must cause the untimeliness, rather than. . .

15  merely oversight, miscalculation or negligence on [the petitioner's] part, all of which would

16  preclude the application of equitable tolling." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008,

17  1011 (9th Cir. 2009) (internal citations omitted).  "The burden of alleging facts which would

18  give rise to tolling falls upon the plaintiff." *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir.

19  1993).

20  Plaintiff must first allege that she diligently pursued her rights. *Menominee Indian Tribe*

21  *of Wis.*, 577 U.S. at 255.  To that point, she states that it was only after she "made contact with

22  her present counsel did she finally begin to believe that anyone in the legal system might take

23  her suffering seriously." (SAC ¶ 335).  But "after she retained present counsel, Plaintiff

24  diligently participated in the preparation of her complaint, which was filed less than a week

25  later." (*Id.* ¶ 337).  Plaintiff does not otherwise explain how she diligently pursued her claims

1    after each cause of action arose against the Defendants.  Without an allegation of an external

2    extraordinary circumstance that prevented timely filing of her claims, Plaintiff has not plausibly

3    alleged that equitable tolling is applicable to her TVPRA claims. *See Waldron-Ramsey*, 556

4    F.3d at 1011.  Thus, the Court finds that Plaintiff is not entitled to equitable tolling.

5    ### 2.  Discovery Rule and Continuing Violations Doctrine

6    In addition to equitable tolling, Plaintiff also advances two additional arguments for why

7    the Court should not dismiss her TVPRA claims as untimely, which the Court addresses below.

8    ### a.  Discovery Rule

9    First, Plaintiff argues that the discovery rule applies to her case. (*See, e.g.*, Resp. to

10   Wynn 15:20–21, ECF No. 150).  "Under this rule, accrual is delayed 'until the plaintiff has

11   "discovered"' his cause of action." *Gabelli v. S.E.C.*, 568 U.S. 442, 449 (2013) (quoting *Merck*

12   *& Co. v. Reynolds*, 559 U.S. 633, 633 (2010)).  "The discovery rule exists in part to preserve

13   the claims of victims who do not know they are injured and who reasonably do not inquire as to

14   any injury." (*Id.* at 450).  "Usually when a private party is injured, he is immediately aware of

15   that injury and put on notice that his time to sue is running." (*Id.*).  "But when the injury is self-

16   concealing, private parties may be unaware that they have been harmed." (*Id.*).  The discovery

17   rule generally applies to matters where fraud is involved. (*See generally id.*).

18   The Court finds that the discovery rule does not apply to the TVPRA.  The TVPRA's

19   text states: "No action" for "a violation of this chapter" may be brought any "later than the later

20   of" "10 years after the cause of action arose" or "10 years after the victim reaches 18 years of

21   age." 18 U.S.C. §§ 1595(a), (c).  Considering a statute of limitations that likewise ran from "the

22   date on which the cause of action arose," the Supreme Court held that this language

23   "incorporates the standard rule that the limitations period commences when the plaintiff has 'a

24   complete and present cause of action.'" *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v.*

25   *Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997) (quoting *Rawlings v. Ray*, 312 U.S. 96, 98

(1941)).  A plaintiff has a "complete and present cause of action" once she "has a right to commence it." *Gabelli*, 568 U.S. at 448.  The TVPRA's accrual language does not wait until the plaintiff has "discovered" his cause of action, but rather commences when the cause of action arose.  Thus, the TVPRA's text does not appear to incorporate the discovery rule.

### b.  Continuing Violations Doctrine

Second, Plaintiff argues that the continuing violations doctrine applies here. (*See, e.g.*, Resp. to Wynn 17:1).  "The continuing violations doctrine functions as an exception to the discovery rule of accrual 'allowing a plaintiff to seek relief for events outside of the limitations period.'" *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (*quoting Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001).  Under this doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continued practice falls within the limitations period." *Id.* (citing *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014)).  "[T]he continuing violations doctrine is most frequently seen in the context of employment discrimination suits" but the Ninth Circuit has also applied the doctrine to actions arising under civil rights laws such as § 1983 claims. (*Id.*).

The Ninth Circuit has not determined whether this doctrine applies to TVPRA claims, but district courts in the Ninth Circuit have considered whether to apply the doctrine in TVPRA cases.  In fact, several district courts in this circuit have characterized conduct under the TVPRA as a continuing tort. *See, e.g.*, *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-CV-00672, 2022 WL 10626493, at *6 (E.D. Cal. Oct. 18, 2022) (applying continuing tort doctrine to TVPRA claims and denying defendants' motions to dismiss on those grounds); *Headley v. Church of Scientology Int'l*, No. CV-09-3987, 2009 WL 10671965, at *6 (C.D. Cal. Aug. 12, 2009) (same); *A.B. v. Interstate Mgmt. Co., LLC*, No. 3:23-CV-00388-IM, 2024 WL 5264652, at *4 (D. Or. Dec. 31, 2024) (finding that the continuing tort doctrine may apply in the case,

given the plaintiff's alleged continuous trafficking for a nearly one-month period). But there is at least one case where a court in another circuit declined to apply the continuing tort doctrine to a plaintiff's TVPRA claim and dismissed the complaint on other grounds. *See Lundstrom v. Holiday Hosp. Franchising, LLC*, No. 1:22-CV-056, 2023 WL 4424725, at \*10 (D.N.D. May 22, 2023).

Applied here, Plaintiff's claim did not accrue until the date of her last alleged injury by each Defendant. Plaintiff generally asserts that she was sex trafficked at each Defendant from 2010/2011 until 2017. (*See generally* SAC). However, a closer reading of the SAC shows that Plaintiff alleges that she was sex trafficked at the Wynn, the Aria, the Cosmopolitan (Nevada Property 1), MGM Resorts, and MGM Grand from 2010 until early 2011, then from mid-2011 until to mid-2013, and then again from 2014 to 2017. (*Id.*). She alleges that she was sex trafficked at the STK Defendants from mid-2011 until to mid-2013, and then again from 2014 to 2017. Lastly, Plaintiff alleges that she was sex trafficked at Haze Nightclub (The Light Group) from 2011 until mid-2013.

Plaintiff's claims against The Light Group are time barred and not subject to the continuing violations doctrine because the allegations wholly pre-date November 2013. A closer question is whether the doctrine applies to Plaintiff's claims against Wynn, Aria, Nevada Property 1, MGM Grand, MGM Resorts, STK, The One Group, and The One Group Hospitality because of the gaps in Plaintiff's sex trafficking at these Defendants' establishments. TVPRA claims "often by their very nature involve repeated conduct occurring over a series of days, weeks, or more" that together forms a wrongful scheme. *A.B.*, 2024 WL 5264652, at \*4 (citing *Headley*, 2009 WL 10671965, at \*6). Because the nature of TVPRA claims can involve repeated conduct over a period of time, the Court finds that the continuing torts doctrine applies, despite the gaps in trafficking. Since Plaintiff filed suit on November 13, 2023, less than ten years from many of the allegations in the SAC, the trafficking incidents

alleged in the SAC against Wynn, Aria, Nevada Property 1, MGM Resorts, STK, The One Group, and The One Group Hospitality are timely such that dismissal at the pleading stage would be premature. Moreover, the claims against MGM Grand are also timely, because Plaintiff states that she only brings claims against MGM Grand for actions that took place from 2015–2017, which falls within the statute of limitations because she added MGM Grand as a party in January 2025. (Resp. to MGM Defendants 2:12–13).

In sum, because the TVPRA claims alleged against The Light Group wholly pre-date November 2013, The Light Group is DISMISSED as a party to this action and its Motion to Dismiss is GRANTED. Plaintiff's TVPRA claims against the remaining Defendants are timely under the continuing violations doctrine. Thus, the Court will analyze the merits of Plaintiff's TVPRA claims against Wynn, Aria, Nevada Property 1, MGM Resorts, STK, The One Group, The One Group Hospitality, and MGM Grand.

### 3. TVPRA

The TVPRA imposes both criminal and civil penalties for sex trafficking.

Two provisions of the TVPRA are relevant to this case. First, 18 U.S.C. § 1591(a) provides for *criminal* penalties for sex trafficking:

> (a) Whoever knowingly—
> (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Second, 18 U.S.C. § 1595 sets forth the standard for *civil* liability under the TVPRA. That section currently provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney's fees.

18 U.S.C. § 1595(a). Thus, § 1595 provides trafficking victims with a private right of action to pursue claims against perpetrators of trafficking as defined in § 1591(a) or those who knowingly financially benefit from trafficking ("beneficiary liability"). *Doe v. Mindgeek*, 558 F. Supp. 3d 828, 835 (C.D. Cal. 2021).

The Court previously found that Plaintiff plausibly alleges that she is a victim of sex trafficking under 18 U.S.C. § 1591(a) and has standing to sue under the TVPRA. (Order re First Mots. Dismiss 16:18–23). The TVPRA's civil provision, § 1595, creates two routes to liability, one for "perpetrator[s]" as defined in the criminal provision and another for those who "knowingly benefit . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595. But because the term "perpetrator" includes anyone who is criminally liable under either § 1591(a)(1) or § 1591(a)(2), there is effectively three routes to civil liability. First, perpetrator liability under § 1591(a)(1). Second, perpetrator liability under § 1591(a)(2). And third, beneficiary liability under § 1595(a). The Court first addresses beneficiary liability under 18 U.S.C. § 1595(a), before moving on to perpetrator liability under § 1591(a)(1) and/or § 1591(a)(2).

### a. Beneficiary Liability

"To prevail on a theory of beneficiary liability under the TVPRA, a plaintiff must allege that the defendant '(1) knowingly benefitted, (2) from participation in a venture [], (3) which they knew or should have known was engaged in conduct that violated the TVPRA.'" *A.B. v.*

*Extended Stay America, Inc.*, 2023 WL 5951390, *5 (W.D. Wash. Sept. 13, 2023) (citing *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022)); *see also* 18 U.S.C. § 1595(a). The Court previously found that Plaintiff sufficiently pled the first two elements of beneficiary liability against all Defendants.[4] (*See generally* Order re First Mots. Dismiss). It also found that Plaintiff plausibly alleged the third element against The Light Group,[5] Wynn, and STK but not the remaining Defendants, and gave Plaintiff leave to amend the third element accordingly. (*Id.* 20:8–12). Thus, the Court turns to discuss whether Plaintiff plausibly alleges that the other remaining Defendants (MGM Resorts, MGM Grand, Nevada Property 1, The One Group, The One Group Hospitality, and Aria) knew or should have known that their venture engaged in conduct that violated the TVPRA.

Whether a participant in a venture knew or should have known that the venture engaged in trafficking imposes a negligence standard. *Ratha*, 35 F.4th at 1177 (explaining that "[t]he phrase 'knew or should have known' usually connotes negligence," which is "a less culpable mental state than actual knowledge or recklessness.") (quoting *Mayview Corp v. Rodstein*, 620 F.3d 1347, 1358 (9th Cir. 1980); *Erickson Prods. Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019)). Another court in this District found, and this Court agrees, that "[i]t is not enough to establish a defendant's knowledge of general commercial sex taking place at its property." *See Tyla D. v. MGM Resorts Int'l*, No. 2:24-CV-00698-APG-BNW, 2024 WL 4839744 *4 (D. Nev. Nov. 19, 2024). Instead, the complaint must plausibly allege that the defendant knew or should have known of a venture that involved sex trafficking by force, threat of force, fraud, or coercion. *See A.B. v. Interstate Mgmt. Co., LLC*, 746 F. Supp. 3d 997, 1007 (D. Or. 2024). To establish this prong, TVPRA claims often involve a defendant either directly supporting a sex trafficker or forming a tacit agreement with the trafficker through a continuous business

---

[4] Wynn asks the Court to reconsider its position on all three elements. (*See generally* Wynn Mot. Dismiss). The Court's disposition on the first two elements remains unchanged.

[5] The Light Group is now a dismissed party but was not at the time of the Order re the First Motions to Dismiss.

relationship. *See, e.g.*, *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (hotel staff rented rooms to trafficker away from other guests and instructed johns to hurry up as they come and go); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108-TWT, 2023 WL 5621913, at *2 (N.D. Ga. Aug. 30, 2023) (hotel employees zip-tied the crash bar of a door to keep it from locking so that commercial sex purchasers could enter and exit); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (hotel operator and trafficker exchanged high fives and spoke of "getting this thing going again" when there were overt signs of sex trafficking); *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 6120682, at *4 (N.D. Cal. Sept. 18, 2023) (hotels had a "continuous business relationship" of renting rooms to traffickers). The Court now discusses whether Plaintiff sufficiently pleads a TVPRA beneficiary liability claim against the remaining Defendants.

### i.    MGM Resorts

MGM Resorts is the parent company of the entities who operate the MGM Grand, the Aria, and the Cosmopolitan. (MGM Defendants Mot. Dismiss 4:24–25). The MGM Defendants argue that the SAC runs afoul to FRCP 8 because Plaintiff does not argue any new or material facts against MGM Resorts specifically. (*Id*. 4:22–5:3). They argue that Plaintiff instead lumps MGM Resorts in with other casino Defendants failing to plead with particularity how MGM Resorts is liable under the TVPRA. (*Id*.). The Court agrees. Plaintiff's SAC makes general allegations against all casino Defendants but does not plead a single fact specific to MGM Resorts. (*See generally* SAC). Under FRCP 8(a)(2), a pleading that states a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While the pleading standard under FRCP 8 "does not require 'detailed factual allegations,'. . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678. The pleading must contain more than "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting

1    *Twombly*, 550 U.S. at 557)).  Plaintiff argues that her pleading style is permissible, but apart

2    from stating that MGM Resorts is the parent company of other Defendants, she fails to argue

3    how it is liable under the TVPRA.  As such, the Court finds that Plaintiff fails to state a

4    TVPRA beneficiary liability claim against Defendant MGM Resorts and therefore DISMISSES

5    the TVPRA beneficiary claim against MGM Resorts.  Because the Court previously instructed

6    Plaintiff to plead her interactions with each Defendant with specificity, the Court finds that

7    leave to amend would be futile. (Order re First Mots. Dismiss 23:15–17).

8                                  **ii.    MGM Grand**

9            Plaintiff alleges that from 2015–2021 she was regularly sent to The Mansion[6] at MGM

10    Grand to perform calls. (SAC ¶ 183).  Plaintiff clarifies, however, that she alleges a TVPRA

11    claim against MGM Grand for her trafficking at The Mansion from 2015 to 2017, which falls

12    within the statute of limitations for this Defendant for the reasons discussed above. (Resp. to

13    MGM Defendants 2:12–13).  Plaintiff alleges that an MGM Grand manager, Carl Clayton,

14    would meet her when she arrived at The Mansion. (*Id.* ¶ 185).  Clayton would then walk her to

15    the villa where the guest who had called the escort line was staying. (*Id.* ¶ 186).  Clayton or

16    another employee would also walk Plaintiff back to her car when she left. (*Id.* ¶ 187).  Plaintiff

17    also alleges that on at least one occasion, Clayton entered a room to deliver room service and

18    interrupted the guest and Plaintiff having commercial sex. (*Id.* ¶ 189).  Plaintiff further alleges

19    that Clayton knew that Plaintiff was under the control of Rashid. (*Id.* ¶ 190).

20            The MGM Defendants argue that Plaintiff fails to allege how the staff at MGM Grand

21    knew or should have known that Plaintiff was compelled to engage in commercial sex through

22    force, threat of force, fraud, or coercion. (MGM Defendants Mot. Dismiss 14:16–19).  They

23    further contend that the SAC does not allege any facts demonstrating that MGM Grand

24    observed any acts creating an inference of force, fraud, or coercion. (*Id.* 15:5–8).

25

---

[6] The Mansion is a hotel associated with and operated as part of the MGM Grand.

In response, Plaintiff argues that The MGM Grand's knowledge of her coerced status was particularly direct and extensive through the actions of Clayton who personally walked Plaintiff to client rooms, giving him extended firsthand observation of her demeanor, appearance, and interactions. (Resp. to MGM Defendants 17:22–25). She further argues that Clayton witnessed Rashid staying at The Mansion with Plaintiff on at least two occasions during which, he observed the controlling dynamic between Rashid and Plaintiff, including their body language, terms of address, and the fact that Rashid arrived with "his" girls rather than ordering escorts through a service. (*Id.* 17:26–18:1). Plaintiff contends that these observations would have made the coercive nature of the relationship clear to any reasonable observer. (*Id.* 18:1–2). Plaintiff also alleges that on at least one occasion, Clayton entered a room and interrupted Plaintiff having commercial sex with a client. (SAC ¶ 189). Plaintiff argues that this direct observation of her commercial sexual activity, combined with his knowledge of her relationship with Rashid, put him on clear notice of her status as a victim of human trafficking. (*Id.* 18:3–6).

The Court finds that Plaintiff's allegations plausibly allege that MGM Grand knew or should have known, for purposes of beneficiary liability, that it engaged in sex trafficking by force, threat of force, fraud, or coercion based on Clayton's interactions with Plaintiff and Rashid. *See A.B.*, 2024 WL 3905482, at *6. The Court agrees with Plaintiff that Clayton's observations would have made the coercive nature of the relationship between Plaintiff and Rashid clear to a reasonable observer. Thus, the Court DENIES the Motion to Dismiss as to the TVPRA beneficiary claim against Defendant MGM Grand.

### iii. Aria

Plaintiff pleads general allegations that she was trafficked at the Aria. (*See generally* SAC). Plaintiff lumps Aria in with other Defendants and states that "[o]n several occasions, Rashid brought [Plaintiff] and several other Priority Girls with him when he gambled at the

casino Defendant's properties where he expected his scantily clad girls to compete for his attention by waiting on him hand and foot." (SAC ¶¶ 242, 244). She also pleads that "[n]o reasonable observer of the dynamic between Rashid and the Priority Girls could have believed that it did not involve some form of fraud or coercion on Rashid's part." (SAC ¶ 243). While these allegations attempt to support the third element of a beneficiary claim, they fall short because these allegations are not plead with sufficient particularity. Thus, Plaintiff does not plead facts that establish a plausible TVPRA claim against Aria. Accordingly, the Court DISMISSES the TVPRA beneficiary claim against Aria. Because the Court previously instructed Plaintiff to plead her interactions with each Defendant with specificity, the Court does not give Plaintiff leave to amend because it finds that amendment would be futile.

### iv.    Nevada Property 1

Nevada Property 1 operates the casino hotel The Cosmopolitan. (*Id.* ¶ 5). Plaintiff's SAC only makes general allegations against Nevada Property 1 and alleges that she met clients at the Cosmopolitan during the relevant time period. (*See generally id.*). Plaintiff does not plead facts that establish that Nevada Property 1 knew or should have known that she was being trafficked. Her SAC merely establishes that Nevada Property 1 may have known that she engaged in commercial sex work, which is not enough to establish a claim under the TVPRA. (*Id.* ¶ 302); *see, e.g.*, Tyla D., 2024 WL 4839744, at *4. Therefore, the Court finds Plaintiff has not pled sufficient facts to establish a plausible claim for beneficiary liability as to Nevada Property 1. Because Plaintiff was on notice that a Defendant's knowledge of commercial sex work is not enough to plead a TVPRA beneficiary claim, the Court does not grant leave to amend this claim because it finds that doing so would be futile. (*See* Order re First Mots. Dismiss 19:7–9, 21:15–18). Thus, the Court DISMISSES the TVPRA beneficiary claim against Nevada Property 1.

### v.      The One Group and The One Group Hospitality

The One Group and The One Group Hospitality operate STK, a steakhouse located inside the Cosmopolitan. (SAC ¶ 6).  Plaintiff's SAC lumps The One Group and The One Group Hospitality together, along with STK, as the "STK Defendants" but does not plead a single fact specific to The One Group and The One Group Hospitality. (*See generally* SAC).  In this Court's Order re Defendants' First Motions to Dismiss, the Court instructed Plaintiff to plead her interactions with each Defendant with specificity. (Order re First Mots. Dismiss 23:15–17).  Because Plaintiff failed to do so in her SAC, the Court finds that Plaintiff again fails to state a TVPRA beneficiary claim against Defendants The One Group and The One Group Hospitality.  Thus, the Court DISMISSES the TVPRA beneficiary claim against The One Group and The One Group Hospitality without leave to amend.

### vi.      Wynn and STK

Wynn and STK move to dismiss Plaintiff's TVPRA beneficiary claims against them. The Court previously held, however, that Plaintiff pled a plausible TVPRA beneficiary claim against Wynn and STK. (*Id.* 20:8–9).  For the reasons discussed in the Court's Order re First Motions to Dismiss, the Court still finds that Plaintiff has sufficiently pled that Wynn and STK may be liable for violations of the TVPRA under beneficiary liability.  Thus, Wynn and the STK Defendant's Motions to Dismiss are DENIED as to this claim.

### vii.      Beneficiary Liability Claims Conclusion

In sum, the TVPRA beneficiary claims against the following Defendants are dismissed without leave to amend: MGM Resorts, Aria, Nevada Property 1, The One Group, and The One Group Hospitality.  The beneficiary claims against Wynn, STK, and MGM Grand will move forward.  The Court now addresses Plaintiff's TVPRA perpetrator liability claims.

### b. Perpetrator Liability

Plaintiff alleges that Defendants violated § 1591(a)(1) and (2) of the TVPRA. (SAC ¶ 384). A "perpetrator" of sex trafficking can be either a direct violator under § 1591(a)(1) or a participant under § 1591(a)(2), but both contain an actual knowledge component. *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 766 (C.D. Cal. 2024) (citing *Geiss v. Weinstein*, 383 F. Supp. 3d 156, 167, n. 3 (S.D.N.Y. 2019)). As explained in the beneficiary liability section, the Court finds that Plaintiff failed to sufficiently plead facts to satisfy a negligence standard (*i.e.* that these Defendants knew or should have known the ventures engaged in sex trafficking) as to MGM Resorts, the Aria, Nevada Property 1, The One Group, and The One Group Hospitality. Because perpetrator liability requires a showing of actual knowledge—a higher standard than negligence—Plaintiff has likewise failed to state a TVPRA perpetrator liability claim as to these Defendants. *See Acevedo*, 713 F. Supp. 3d at 766. Accordingly, the Court DISMISSES the TVPRA perpetrator liability claims against MGM Resorts, Aria, Nevada Property 1, The One Group, and The One Group Hospitality. Because all claims alleged against these Defendants have been dismissed, the Court DISMISSES MGM Resorts, Aria, Nevada Property 1, The One Group, and The One Group Hospitality as parties to this lawsuit with prejudice. The Court now turns to address the merits of Plaintiff's TVPRA perpetrator liability claims against Wynn, STK, and MGM Grand.

### i. Direct Violator

To establish direct violator perpetrator liability, Plaintiff must adequately plead that Wynn, STK, and MGM Grand knowingly and in interstate or foreign commerce: (1) "recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person"; (2) "knowing, . . . or in reckless disregard of the fact, that means of force, threats of force, fraud. . . or any combination of such means will be used"; (3) "to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1).

As to the first element, Plaintiff's SAC is devoid of any allegation that Wynn, STK, or MGM Grand knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained her. (*See generally* SAC). In Plaintiff's Responses, she argues at length that Wynn, STK, and MGM Grand harbored or provided her. (Resp. to Wynn 12:20); (Resp. to STK Defendants 9:15–16); (Resp. to MGM Defendants 13:5–6). But Plaintiff cannot amend her pleading through her responsive brief. *See,* e.g., *Riser v. Cent. Portfolio Control Inc.*, No. C21-5238LK, 2022 WL 2209648, at *4 n.1 (W.D. Wash. June 21, 2022); *see also Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). Plaintiff's failure to allege sufficient factual matter in her SAC that, accepted as true, would state a claim violation of § 1591(a)(1) is fatal to her claim. *Iqbal*, 556 U.S. at 678. Thus, Plaintiff fails to plausibly allege this element.

As to the second and third elements, Plaintiff plausibly alleges that Wynn, MGM Grand, and STK knew, or at the very least recklessly disregarded, that means of force, threats of force, fraud, or any combination of such means was used to cause Plaintiff to engage in a commercial sex act.[7] Defendants dispute that her SAC sufficiently pleads knowledge or reckless disregard. But knowledge does not require "certainty as to a future act," rather it "is a state of mind in which the knower is familiar with a pattern of conduct." *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010). Importantly, "knowledge, and other conditions of a person's mind may be alleged generally" in the SAC. Fed. R. Civ. P. 9(b). Plaintiff's SAC indeed pleads that the remaining Defendants' employees knew she was being trafficked and provides reasons that bolster this allegation. (*See, e.g.*, SAC ¶ 93–95, 240–250). Wynn argues that it cannot be held liable for its employees' actions, but the Court disagrees at this stage. To plead perpetrator

---

[7] Plaintiff is correct that this element can be satisfied by either pleading that Defendant had actual knowledge that the victim would be coerced into commercial sex or acted in reckless disregard of the fact that the victim would be coerced. (Resp. Wynn 9:11–15).

liability, Plaintiff "must plausibly allege that the casinos *or their employees* were perpetrators under the TVPRA." *See Tyla D.*, 2024 WL 4839744, at *4 (emphasis added). Thus, the Court finds that Plaintiff plausibly alleges these elements at the Motion to Dismiss stage.

Because Plaintiff fails to allege the first element of direct violator perpetrator liability, Plaintiff's § 1591(a)(1) claim is DISMISSED against each of these Defendants. But, because Plaintiff's Responses allege more facts than her SAC that go to whether Defendants knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained her, the Court finds that amendment would not be futile. Thus, Plaintiff is granted leave to amend to plead facts that plausibly allege the first element, if such facts exist.

### ii.  Participant

To establish participant perpetrator liability, Plaintiff must plausibly plead:

> "Whoever knowingly" "benefits, financially or by receiving anything of value," "from participation in a venture which has engaged in an act described in violation of [(a)(1)]"—*i.e.*, "knowingly assisting, supporting, or facilitating a violation of [(a)(1)]"— knowing or recklessly disregarding that "force . . . , fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act."

18 U.S.C. §§ 1591(a)(2), (e)(4).

Wynn, MGM Grand, and STK each move to dismiss the § 1591(a)(2) claim pled against them. (Wynn Mot. Dismiss 6:6–7); (MGM Defendants Mot. Dismiss 17:24–27); (STK Defendants Mot. Dismiss 4:26). It is unclear to the Court whether Plaintiff abandons her § 1591(a)(2) claim in her Responses to these Defendants because she only responds to their arguments about the § 1591(a)(1) claim. (*See generally* Resp. to Wynn); (*see generally* Resp. to MGM Defendants); (*see generally* Resp. to STK Defendants); *see* LR 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion. . . constitutes a consent to the granting of the motion."). Despite Plaintiff's failure to respond to Defendants' arguments as to participant perpetrator liability, the Court nonetheless addresses the merits of

Plaintiff's claim because there is a preference in federal court for cases to be decided on the merits. Here, the SAC adequately pleads that Wynn, MGM Grand, and STK knowingly benefitted financially from participation in a venture. (*See* SAC ¶¶ 254, 256, 260, 264, 385). However, because Plaintiff fails to plausibly allege that Defendants' ventures engaged in an act described in violation of § 1591(a)(1) (direct violator perpetrator liability) for the reason discussed above, the Court finds that Plaintiff's § 1591(a)(2) (participant perpetrator liability) claim likewise fails. Because amendment would not be futile though, the Court grants Plaintiff leave to amend this claim accordingly. Thus, Plaintiff's § 1591(a)(2) claim against Wynn, MGM Grand, and STK is DISMISSED with leave to amend.

In sum, Plaintiff's beneficiary claims pled against Wynn, MGM Grand, and STK remain. Plaintiff's perpetrator liability claims as to Wynn, MGM, and STK are DISMISSED. Because amendment would not be futile, the Court grants Plaintiff leave to amend her perpetrator liability claims only against Wynn, MGM Grand, and STK.

## IV.    **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendant Radisson's Motion to Dismiss, (ECF No. 130), is **GRANTED**. Defendant Radisson is **DISMISSED** as a party with prejudice.

**IT IS FURTHER ORDERED** that Defendant Highgate's Motion to Dismiss, (ECF No. 131), is **DENIED as MOOT**. Per the Order re Stipulation to Dismiss, (ECF No. 163), Defendant Highgate is **DISMISSED** as a party with prejudice.

**IT IS FURTHER ORDERED** that Defendant The Light Group's Motion to Dismiss, (ECF No. 134), is **GRANTED**. Defendant The Light Group is **DISMISSED** as a party with prejudice.

**IT IS FURTHER ORDERED** that Defendant Wynn's Motion to Dismiss, (ECF No. 132), is **GRANTED, in part, and DENIED, in part**. It is granted, with leave to amend, as to

Plaintiff's § 1591(a)(1) and (2) perpetrator liability claims, but denied as to Plaintiff's § 1595 beneficiary liability claim.

**IT IS FURTHER ORDERED** that Defendants MGM Resorts, Aria, MGM Grand, and Nevada Property 1's Motion to Dismiss, (ECF No. 133), **is GRANTED, in part, and DENIED, in part**. Defendants MGM Resorts, Aria, and Nevada Property 1 are **DISMISSED** as parties to this action with prejudice. Plaintiff's § 1591(a)(1) and (2) perpetrator liability claims against remaining Defendant MGM Grand are **DISMISSED** with leave to amend. Plaintiff's § 1595 beneficiary liability claim against MGM Grand survives.

**IT IS FURTHER ORDERED** that Defendants STK, The One Group, and The One Group Hospitality's Motion to Dismiss, (ECF No. 135), is **GRANTED, in part, and DENIED, in part**. Defendants The One Group and The One Group Hospitality are **DISMISSED** as parties to this action with prejudice. Plaintiff's § 1591(a)(1) and (2) perpetrator liability claims against remaining Defendant STK is **DISMISSED** with leave to amend. Plaintiff's § 1595 beneficiary liability claim against STK survives.

**IT IS FURTHER ORDERED** that Defendant Wynn's Motion for Leave to File Notice of Supplemental Authority, (ECF No. 159), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall have 21 days from the date of this Order to file her Third Amended Complaint. The Third Amended Complaint should attempt to cure the deficiencies of Plaintiff's § 1591(a)(1) and (2) claims against Wynn, MGM Grand, and STK.

**DATED** this __26__ day of June, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court