**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

C.C.,

Plaintiff,

vs.

JAMAL F. RASHID, *et al.*,

Defendants.

Case No.: 2:23-cv-02056-GMN-BNW

**ORDER GRANTING MOTIONS TO DISMISS**

Pending before the Court is the Motion for Certification for Interlocutory Appeal, (ECF No. 172), filed by Defendant Wynn Las Vegas, LLC ("Wynn").  Plaintiff C.C. filed a Response, (ECF No. 181), to which Wynn replied, (ECF No. 182).  Further pending before the Court are four Motions to Dismiss filed by Defendants Wynn, (ECF No. 174), Tao Group Operating, LLC ("Tao"), (ECF No. 176), MGM Grand Hotel, LLC ("MGM Grand"), (ECF No. 177), and STK Las Vegas, LLC ("STK"), (ECF No. 179).[1]  Plaintiff filed Responses, (ECF Nos. 185–186, 188–189), to which Defendants replied, (ECF Nos. 190, 192–193, 196).  STK filed a Joinder, (ECF No. 194), to Wynn's Motion to Dismiss and Reply.  Lastly, Wynn filed three Motions for Leave to File Notice of Supplemental Authority, (ECF Nos. 197–199).  Plaintiff did not file Responses, and the deadline to do so has passed.

Because the Court dismisses Wynn as a party to this lawsuit, the Court DENIES Wynn's Motion for Interlocutory Appeal as moot.  Moreover, for the reasons discussed below, the Court GRANTS the four pending Motions to Dismiss.  Lastly, the Court GRANTS Wynn's Motions for Leave to File Notice of Supplemental Authority.[2]

---

[1] Defendant Jamal Rashid did not move to dismiss or file an Answer to Plaintiff's Third Amended Complaint.
[2] Under Local Rule 7-2(g), "[a] party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause."  Wynn filed Motions for Leave to File Notice of Supplemental

## I.    BACKGROUND

This action arises from Defendants' alleged involvement with Plaintiff being sex trafficked at their establishments. (*See generally* Third Am. Compl. ("TAC"), ECF No. 170). The Court incorporates by reference the detailed factual background stated in its Order Granting Defendants' Motions to Dismiss the First Amended Complaint, (ECF No. 115). Accordingly, the Court only provides facts that are relevant to the pending Motions.

In the Order Regarding the Second Motions to Dismiss, (ECF No. 164), the Court allowed Plaintiff's Trafficking Victims Protection Reauthorization Act ("TVPRA") claim based on beneficiary liability to proceed against Wynn, MGM Grand, and STK. (Order re Second Mots. Dismiss 22:10–11, ECF No. 164).  The Court dismissed Plaintiff's TVPRA claim based on perpetrator liability against Wynn, MGM Grand, and STK with leaved to amend. (*Id.* 22:11–13).  Because the deadline for Tao to answer or otherwise respond to Plaintiff's Second Amended Complaint fell after the Court's Order Regarding the Second Motions to Dismiss, the Order did not apply to Plaintiff's claims against Tao.  Plaintiff then filed her TAC alleging Defendants violated the TVPRA based on beneficiary and perpetrator liability.  Defendants now move to dismiss the TAC.

## II.    LEGAL STANDARD

Dismissal is appropriate under Federal Rule Civil Procedure ("FRCP") 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*,

---

Authority, informing the Court about two orders in the District of Nevada, and an order in an out-of-circuit district that were decided after the parties submitted their briefing on its pending motions. (*See* Mots. Leave, ECF Nos. 197–199).  Plaintiff did not file Responses, or otherwise object to the Motions for Leave.  Because Plaintiff does not oppose, and for good cause appearing, the Court GRANTS the Motions for Leave to File Notice of Supplemental Authority. *See* LR 7-2(d).

550 U.S. at 555.  Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.   DISCUSSION

Defendants each argue that the TAC should be dismissed for failure to state a claim. The Court first takes up timeliness arguments before turning to the merits of Plaintiff's TVPRA claim.

**A.  Timeliness of TVPRA Claim**

This Court previously held that Plaintiff failed to plausibly allege that her TVPRA claims should be equitably tolled. (Order re Second Mots. Dismiss 8:4).  The Court also rejected Plaintiff's invocation of the discovery rule, holding that it does not apply to the TVPRA. (*Id.* 9:4).  The Court then recognized that the Ninth Circuit had not decided whether

the continuing violation doctrine applied in TVPRA cases, but nevertheless found that the continuing violation doctrine applied, and held that Plaintiff's TVPRA claim was thus timely. (*Id.* 11:9–10).  Wynn asks the Court to reconsider its prior ruling, citing new authorities that became available after the second Motions to Dismiss were fully briefed. (Wynn Mot. Dismiss at n.1 (citing *Jane Doe v. Six Continents Hotels Inc.*, 2025 WL 2020003, at *6 (C.D. Cal. June 26, 2025); *Doe v. G6 Hosp., LLC*, 2025 WL 1167550, at *4–5 (W.D. Wash. Apr. 22, 2025)). The Court finds these cases persuasive for the reasons discussed below.

In *Jane Doe v. Six Continents Hotels Inc.*, the court recognized that while certain courts have applied the continuing violation doctrine to claims brought under the TVPRA, those courts did not address important limitations on that doctrine in the Ninth Circuit and at the Supreme Court. 2025 WL 2020003, at *6 (C.D. Cal. June 26, 2025).  *Jane Doe v. Six Continents Hotels Inc.* incorporated the discussion articulated in *Doe v. G6 Hospitality, LLC*, No. 2:24-cv-01235-RSL, 2025 WL 1167550 (W.D. Wash. Apr. 22, 2025), which the Court does here.

*Doe v. G6 Hospitality, LLC* explained that the continuing violation doctrine is an exception to the discovery rule of accrual which allows a plaintiff to seek relief for events outside of the limitations period "so long as the last act evidencing the continuing practice falls within the limitations period." *See Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (citations omitted).  Prior to 2002, the Ninth Circuit applied the continuing violation doctrine in two scenarios: first, to a series of related acts directed at the plaintiff, one or more of which fell within the limitations period, and second, to the maintenance of an unlawful system, policy, or practice to which the plaintiff was subjected that extended both before and during the limitations period. *Bird*, 935 at 746–47.  In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), the Supreme Court rejected an application of the "serial acts" theory, holding that where discrete acts cause discrete harm, the plaintiff must bring suit in a timely manner and

may recover only for those acts occurring within the limitations period. The Supreme Court expressly found that the continuing violation theory remains viable for hostile work environment claims, but explained the distinction in a way that makes clear that its application is extremely limited:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. *See* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 348–349 (3d ed. 1996) (hereinafter Lindemann) ("The repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence"). The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("As we pointed out in *Meritor* [*Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986),] 'mere utterance of an. . . epithet which engenders offensive feelings in a[n] employee,' *ibid.* (internal quotation marks omitted), does not sufficiently affect the conditions of employment to implicate Title VII"). Such claims are based on the cumulative effect of individual acts.

*Morgan*, 536 U.S. at 115. The Supreme Court reasoned that as long as the hostile or abusive acts occurring within the limitations period were related to the prior acts—*i.e.*, they were part of the same hostile work environment—they were all part of a single "unlawful employment practice" for which the employee can recover. *Id.* at 118.

The Ninth Circuit has applied *Morgan* to bar claims predicated on discrete time-barred acts and to largely abrogate the systemic branch of the continuing violations doctrine. *See Bird*, 935 F.3d at 747–48. After *Morgan*, "little remains of the continuing violations doctrine" in this circuit. *Bird*, 935 F.3d at 748. The key question, then, is whether Plaintiff's claims against Defendants are predicated on discrete acts, each of which caused harm and was actionable at the time it occurred, or are part of a single illegal act that arises or accrues over time and may be pursued, in its entirety, as long as suit is timely filed after the last related act.

The *Doe v. G6 Hospitality, LLC* court acknowledged that, for example, a hotelier's knowledge (or reckless disregard) of the fact that its hotel rooms are being used for sex trafficking and/or its knowing participation in a venture engaged in sex trafficking may develop through a series of acts and over a period of time. But once the requisite knowledge exists, each act of "harboring" or each receipt of a benefit from the sex trafficking venture is actionable under 18 U.S.C. ¶ 1591(a). That the unlawful conduct is repeated does not stall the running of the limitations period or make all subsequent trafficking episodes part of a single illegal act. Each discrete, actionable act starts a new clock for filing a lawsuit alleging that act. *Morgan*, 536 U.S. at 114; *Bird*, 935 F.3d at 747.

The Court ultimately finds *Jane Doe v. Six Continents Hotels Inc.* and *Doe v. G6 Hospitality*'s discussion of the history of the continuing violation doctrine instructive and persuasive. As such, the Court agrees with those courts and finds that the continuing violation doctrine is inapplicable to Plaintiff's TVPRA claims. Thus, because TVPRA claims must be brought within ten years of their accrual unless an equitable doctrine extends the period—which the Court finds one does not here—Plaintiff's claims related to trafficking against MGM Grand and Tao that arose before January 27, 2015, and her claims against Wynn and STK that arose before November 13, 2013, are time-barred.[3]

**B. TVPRA Liability**

Plaintiff brings one cause of action against Defendants for their alleged violation of the TVPRA. The TVPRA imposes both criminal and civil penalties for sex trafficking.

---

[3] The TVPRA requires all claims to be brought within 10 years after either the cause of action arose or the victim reaches 18 years of age, whichever is later. 18 U.S.C. § 1595(c). Here, Plaintiff was over the age of 18 at the time of the alleged trafficking activity. Thus, as it relates to each Defendant, Plaintiff had to assert her TVPRA claim "not later than . . . ten years after the cause of action arose." *Id.* Plaintiff initiated this lawsuit against Wynn and STK on November 13, 2023. Plaintiff initiated this lawsuit against MGM Grand and Tao on January 27, 2025, when she added them as named Defendants in her Second Amended Complaint. Moreover, Plaintiff previously explained that she only states a TVPRA claim against MGM Grand for her trafficking during 2015-2017. (Resp. to MGM Grand re Second Mot. Dismiss, ECF No. 149).

Two provisions of the TVPRA are relevant to this case. First, 18 U.S.C. § 1591(a) provides for *criminal* penalties for sex trafficking:

> (a) Whoever knowingly—
> (1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Second, 18 U.S.C. § 1595 sets forth the standard for *civil* liability under the TVPRA. That section currently provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). Thus, § 1595 provides trafficking victims with a private right of action to pursue claims against perpetrators of trafficking as defined in § 1591(a) or those who knowingly financially benefit from trafficking ("beneficiary liability"). *Doe v. Mindgeek USA Inc.*, 558 F. Supp. 3d 828, 835 (C.D. Cal. 2021), *adhered to on denial of reconsideration,* 574 F. Supp. 3d 760 (C.D. Cal. 2021).

The Court previously found that Plaintiff plausibly alleges that she is a victim of sex trafficking under 18 U.S.C. § 1591(a) and has standing to sue under the TVPRA. (Order re First Mots. Dismiss 16:18–23). The TVPRA's civil provision, § 1595, creates two routes to liability,

one for "perpetrator[s]" as defined in the criminal provision and another for anyone who "knowingly benefits . . . from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595. But because the term "perpetrator" includes anyone who is criminally liable under either § 1591(a)(1) or § 1591(a)(2), there is effectively three routes to civil liability. First, perpetrator liability under § 1591(a)(1). Second, perpetrator liability under § 1591(a)(2). And third, beneficiary liability under § 1595(a). Plaintiff's TAC alleges that Defendants are liable under the TVPRA based on all three theories of liability. Accordingly, the Court first addresses beneficiary liability under § 1595(a), before moving on to perpetrator liability under § 1591(a)(1) and/or § 1591(a)(2).

### 1. Beneficiary Liability

"To prevail on a theory of beneficiary liability under the TVPRA, a plaintiff must allege that the defendant '(1) knowingly benefitted, (2) from participation in a venture [], (3) which they knew or should have known was engaged in conduct that violated the TVPRA.'" *A.B. v. Extended Stay Am. Inc.*, No. 3:22-CV-05939-DGE, 2023 WL 5951390, at *5 (W.D. Wash. Sept. 13, 2023) (citing *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1175 (9th Cir. 2022)); *see also* 18 U.S.C. § 1595(a). Defendant Tao moves to dismiss Plaintiff's TVPRA claim based on beneficiary liability. (Tao Mot. Dismiss 8:1–2, ECF No. 176). Because Tao moves to dismiss this part of Plaintiff's TVPRA claim and due to the ever-evolving nature of TVPRA case law, the Court reexamines whether Plaintiff sufficiently pleads a TVPRA beneficiary liability claim against each Defendant.[4]

---

[4] Wynn and STK do not move to dismiss Plaintiff's TVPRA claim based on beneficiary liability (although they have in their past motions to dismiss), because Wynn moves to certify questions related to beneficiary liability. (*See* Mot. Cert., ECF No. 172). Similarly, MGM Grand does not move to dismiss the TVPRA claim based on beneficiary liability. MGM Grand states that is does not waive its prior arguments regarding beneficiary liability, but in deference to the Court's prior rulings, does not reargue beneficiary liability in its Motion to Dismiss. (MGM Grand Mot. Dismiss at n. 1, ECF No. 177). But because Wynn, STK, and MGM Grand are in a position similar to that of Tao, the Court *sua sponte* analyzes whether Plaintiff states a TVPRA claim under a theory of beneficiary liability as to all Defendants. *Silverton v. Dep't of Treasury of U. S. of Am.*, 644 F.2d 1341,

### a. Knowingly Benefit

The first question is whether Plaintiff has plausibly alleged that Defendants knowingly benefited pursuant to § 1595(a). If tied to participation in a venture, "the benefit need not take the form of profits that are the specific result of a sex-trafficking venture." *Tyla D. v. MGM Resorts Int'l*, No. 2:24-CV-00698-APG-BNW, 2024 WL 4839744, at *3 (D. Nev. Nov. 19, 2024) (citing *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 564 (7th Cir. 2023)). Drawing every inference in Plaintiff's favor, as the Court must at the motion to dismiss stage, it is plausible that Defendants knowingly experienced increased visitation, revenues, and guest satisfaction, but because the Court finds that Defendants did not participate in a venture, the Court does not determine whether Plaintiff plausibly pled this element. *See Tyla D.*, No. 2:24-CV-00698-APG-BNW, 2024 WL 4839744, at *3.

### b. Participation in a Venture

The next question is whether Plaintiff plausibly pleads that Defendants "participated in a venture." 18 U.S.C. § 1595(a). The Court previously found that Plaintiff plausibly pled this element, explaining that "operating a casino is a commercial venture and it is reasonable to infer that operating a hotel and casino necessarily involves many persons and entities taking part 'in a common undertaking or enterprise involving risk and potential profit.'" (Order re First Mots. Dismiss 18:18–21 (quoting *Tyla D.*, 2024 WL 4839744, at *3 (quoting *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 725 (11th Cir. 2021)))). However, based on more recent case law, the Court reexamines its determination.

---

1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."); *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (explaining that a trial court may *sua sponte* dismiss claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, even shortly before trial); *see also Heino v. U.S. Ctr. for Medicare*, 709 F. Supp. 3d 1239 (D. Or. 2023) (applying *Silverton* and *Omar* more recently).

The Court finds *Doe (K.R.D.) v. Hilton Worldwide Holdings Inc.*'s discussion of the statutory language, legislative intent, and analysis of other courts' applications of this element instructive. 798 F. Supp. 3d 1082, 1092–1095 (N.D. Cal. 2025).  And while the Court declines to expressly adopt a definition of "participation in a venture" in this Order, the Court agrees with the *Doe (K.R.D.)* court's assessment that "[e]ven while applying varying definitions of 'participation in a venture,' multiple circuit courts and many district courts have recognized that a continuous business relationship like that alleged between [a defendant] and [a plaintiff's] trafficker is sufficient to allege participation in a venture under section 1595." *Id.* at 1095.  Not only is it sufficient, but it is usually necessary to establish a successful TVPRA claim.  Indeed, TVPRA claims often involve a defendant either directly supporting a sex trafficker or forming a tacit agreement with the trafficker through a continuous business relationship. *See, e.g.*, *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023) (hotel staff rented rooms to trafficker away from other guests and instructed johns to hurry up as they come and go); *J.K. v. Ramada Worldwide, Inc.*, No. 1:23-CV-108-TWT, 2023 WL 5621913, at *2 (N.D. Ga. Aug. 30, 2023) (hotel employees zip-tied the crash bar of a door to keep it from locking so that commercial sex purchasers could enter and exit); *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017) (hotel operator and trafficker exchanged high fives and spoke of "getting this thing going again" when there were overt signs of sex trafficking); *B.J. v. G6 Hosp., LLC*, No. 22-cv-03765-MMC, 2023 WL 6120682, at *4 (N.D. Cal. Sept. 18, 2023) (hotels had a "continuous business relationship" of renting rooms to traffickers).

Here, there are no allegations that the Defendants rented rooms to Plaintiff's traffickers, for example, or had any other pattern of conduct or tacit agreement with them.  Instead, the TAC's allegations show that Wynn and MGM Grand, in their capacities as hotels, rented rooms to guests who purchased sex from Plaintiff, and Wynn and MGM Grand employees had

continuous business relationships with *Plaintiff*. (TAC ¶¶ 249–255).  Moreover, there are no allegations that Wynn (as XS Nightclub), STK, and Tao had a continuous business relationship with Plaintiff's traffickers.  Again, the allegations explain the relationship they had with Plaintiff. (*Id.* ¶¶ 158–159, 163–167, 173–179, 182–187).[5]  Plaintiff's continuous business relationship with Defendants cannot form the basis for beneficiary liability.  The TVPRA surely does not render victims civilly liable for their own trafficking.  Plaintiff therefore fails to establish Defendants' "participation in a venture," because she fails to connect the dots between her traffickers and the moving Defendants.  Accordingly, Plaintiff does not sufficiently allege a TVPRA claim based on beneficiary liability.[6]  The TVPRA claim based on beneficiary liability against the moving Defendants is therefore DISMISSED.  Plaintiff is denied leave to amend because the Court finds that another opportunity to amend would be futile.

### 2. Perpetrator Liability

Plaintiff contends that Defendants are perpetrators within the meaning of 18 U.S.C. § 1591(a). (TAC ¶ 339).  A "perpetrator" of sex trafficking can be either a direct violator under § 1591(a)(1) or a participant under § 1591(a)(2), but both contain an actual knowledge component. *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 766 (C.D. Cal. 2024) (citing *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 167, n. 3 (S.D.N.Y. 2019)).  Moreover, a "defendant [must] know the facts that make [its] conduct illegal." *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1143 (9th Cir. 2022).

---

[5] Plaintiff alleges that "employees to whom she paid kickbacks knew that she was controlled by a pimp" because Walter, one of her traffickers, personally met with a nightclub host one time to pay him off. (TAC ¶¶ 205–207).  But Plaintiff does not name the nightclub or otherwise connect the nightclub to one of the Defendants.  The Court previously instructed Plaintiff to plead her interactions with each Defendant with specificity, (Order re First Mots. Dismiss 23:15–17, ECF No. 115), and reiterated that instruction repeatedly in its Order regarding the second Motions to Dismiss, (*see generally* Order re Second Mots. Dismiss, ECF No. 164).  Accordingly, the Court finds that this single example, pled only on information and belief, and not as to a specific Defendant fails to "connect the dots" to establish that any of the Defendants had a continuous business relationship with any of Plaintiff's traffickers.

[6] The Court need not address the third element of a TVPRA claim based on beneficiary liability because failure to plead any one element is dispositive of the claim.

### a. Direct Violator

To establish direct violator perpetrator liability, Plaintiff must adequately plead that Wynn, STK, MGM Grand, and Tao knowingly and in interstate or foreign commerce: (1) "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person"; (2) "knowing, . . . or in reckless disregard of the fact, that means of force, threats of force, fraud. . . or any combination of such means will be used"; (3) "to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1).  The Court takes up each element in turn.

### i. Knowingly Recruits, Harbors, Transports, Provides, or Obtains

Plaintiff contends that Defendants knowingly recruited, harbored, transported, provided, obtained, or maintained her.  The Court addresses each action below.

### (A) Harbor

Plaintiff argues that each Defendant knowingly harbored her. (Resp. to Wynn 17:25, ECF No. 186).  But her TAC only puts forth a theory for liability based on harboring as to Wynn and MGM Grand (not STK and Tao).[7] (TAC ¶¶ 332–334).  Because the TVPRA does not define "harbor," the Court must employ the traditional rules of statutory interpretation to determine whether Wynn and MGM Grand harbored Plaintiff in violation of the TVPRA. *See United States v. Laursen*, 847 F.3d 1026, 1032 (9th Cir. 2017).  "Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–76 (2009).  In the absence of any statutory definition, a court's

---

[7] Plaintiff cannot amend her pleading through her responsive brief. *See, e.g.*, *Riser v. Cent. Portfolio Control Inc.*, No. 3:21-CV-05238-LK, 2022 WL 2209648, at *4 (W.D. Wash. June 21, 2022), *aff'd,* No. 23-35502, 2024 WL 4707886 (9th Cir. Nov. 7, 2024); *see also Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

interpretation "commenc[es] with the plain and common meaning of the word derived from dictionary definitions." *Laursen*, 847 F.3d at 1032.

The word "harbor" means "to give shelter or refuge to." *Harbor*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/harbor (last visited Jan. 23, 2026). Other courts have found that a hotel defendant knowingly harbors a trafficking victim when it affords shelter or lodging to her by renting a room in which she is housed to her trafficker. *See Doe (K.R.D.)*, 798 F. Supp. 3d at 1099–1100 (citing *Doe v. Wyndham Hotels & Resorts,* No. 2:23-CV-01676-DAD-CSK, 2025 WL 85831, at *15 (E.D. Cal. Jan. 7, 2025) ("[H]otels can 'harbor' under the TVPRA through the act of renting rooms to a trafficker.")); *Doe v. Hotels*, No. 6:23-CV-1012-JSS-LHP, 2024 WL 2955728, at *6 (M.D. Fla. June 12, 2024), *reconsideration denied sub nom. Jane Doe K.R. v. Choice Hotels*, No. 6:23-CV-1012-JSS-LHP, 2024 WL 4373374 (M.D. Fla. Oct. 2, 2024) (holding that providing a trafficker "with a room and shelter whereby Plaintiff could be trafficked for profit" was sufficient to state a claim for harboring); *Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017) (citing *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017)) (holding that "providing lodging to someone for the purposes of obtaining her labor or services against her will constitutes 'harboring'" under the forced labor provision of the TVPRA); *United States v. Gatlin*, 90 F.4th 1050, 1060 (11th Cir. 2024), *cert. denied sub nom. Gatlin v. United States*., 145 S. Ct. 1065, 220 L. Ed. 2d 389 (2025) (holding that defendant harbored victim under 18 U.S.C. § 1591 by renting her a motel room); *United States v. Mozie*, 752 F.3d 1271, 1286 (11th Cir. 2014) (holding that defendant harbored victim under 18 U.S.C. § 1591 where she "stayed at [his] house for five days and four nights").

Here, Plaintiff states that Wynn and MGM Grand knowingly harbored her by allowing her to walk the casino carpet unimpeded and by allowing her to engage in commercial sex in the privacy of the rooms her clients purchased. (Resp. to Wynn 18:22–25, ECF No. 186 (citing

TAC ¶¶ 68, 188–194, 332–333)).  She further avers that Wynn harbored her by inviting her to the XS Nightclub to walk around and pick up clients. (*Id.* 18:26–27 (citing TAC ¶¶ 160–167)). But the Court finds that Plaintiff's TAC fails to plausibly plead that Wynn and MGM Grand knowingly harbored her in violation of the TVPRA.  Looking at the allegations Plaintiff cites to support her "harboring," argument, the Court notes that the allegation in ¶ 68 is time-barred as to both Wynn and MGM Grand.  Moreover, ¶¶ 188–194 are not pled against a specific Defendant.[8]  Furthermore, ¶¶ 160–167 cannot plausibly be read to lead to an inference that Wynn, through XS nightclub, gave shelter or refuge to Plaintiff when Plaintiff picked up clients inside the nightclub.  And as for ¶¶ 332–333, Plaintiff alleges that Wynn and MGM Grand harbored her by providing shelter and refuge for her activities in both a "literal sense" by providing a roof over her head when she engaged in commercial sex in client's rooms and in a "metaphorical sense" by concealing her from police.  But these allegations fall short of the kind of facts that courts usually find to properly allege that a plaintiff  was "harbored," because the allegations do not contain facts that Wynn and MGM Grand rented rooms to Plaintiff's trafficker or Plaintiff, only guests who sought out commercial sex.  Thus, Plaintiff fails to plead that Wynn and MGM Grand knowingly harbored her.

### (B) Transport

The TAC pleads a theory for perpetrator liability based on transporting only as to MGM Grand. (TAC ¶ 335).  Relying on the Merriam-Webster definition of "transport," Plaintiff argues that MGM Grand knowingly "transferred" or "conveyed" her from one place to another when its staff walked Plaintiff from her car to the suites of guests who had just ordered sex from an escort line, and then back to her car when she finished. (Resp. to MGM Grand 24:1–8,

---

[8] Because the Court previously instructed Plaintiff to plead her interactions with each Defendant with specificity, (Order re First Mots. Dismiss 23:15–17) and reiterated that instruction repeatedly in its Order regarding the second Motions to Dismiss, (*see generally* Order re Second Mots. Dismiss), these allegations fail to support Plaintiff's claim.

ECF No. 188 (citing TAC ¶¶ 140–151, 335)).  But the Court finds these allegations fail to plausibly allege that MGM Grand knowingly transported Plaintiff in violation of the TVPRA because the Court is not persuaded that walking with a person constitutes transporting that person.  Thus, the Court finds that the TAC fails to allege sufficient facts that MGM Grand is liable under the TVPRA based on a transporting theory.

### (C) Recruit and Obtain

The TAC pleads a theory for perpetrator liability based on recruiting and obtaining only as to Tao. (TAC ¶ 337).  Again, relying only on dictionary definitions of the words "recruits" and "obtains," Plaintiff argues Tao recruited and obtained her when nightclub hosts reached out and invited her to Tao operated nightclubs, Marquee and OMNIA, and identified clients for Plaintiff. (Resp. to Tao 7:11–15, 7:20–25, ECF No. 185).  As Plaintiff states, Merriam-Webster defines "recruit" as "to secure the services of: engage, hire." *Recruit*, Merriam-Webster Dictionary, https://www.merriam-webster.com/ dictionary/recruit (last visited Jan. 23, 2026). The TAC does not allege that Tao, or its employees, secured the services of Plaintiff by engaging or hiring her; rather the TAC alleges that Tao connected Plaintiff to *clients* who secured the services of Plaintiff. (TAC ¶ 182–187).  Additionally, as Plaintiff explains, Black's law dictionary defines "obtain" as: "To bring into one's own possession; to procure, esp. through effort." *Obtain*, Black's Law Dictionary (12th ed. 2024).  And Merriam-Webster defines "obtain" as "to gain or attain usually by planned action or effort." *Obtain*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/obtain (last visited Jan. 23, 2026).  The allegations in the TAC fail to show how Tao brought Plaintiff into its own possession, gained, or attained her.  Thus, the Court finds that the TAC fails to allege sufficient facts that MGM Grand is liable under the TVPRA based on theories of recruiting and obtaining.

**(D) Provide**

Plaintiff also avers that all Defendants knowingly provided her. (Resp. to Wynn 20:19). But again, the TAC pleads a theory for perpetrator liability based on providing only as to MGM Grand, Tao, and STK (not Wynn). (TAC ¶ 335–336). The Merriam-Webster dictionary defines "provide" as "to supply or make available (something wanted or needed)." *Provide*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/provide (last visited Jan. 23, 2026). Plaintiff argues that MGM Grand knowingly provided her when staff, including its manager, Carl Clayton, walked her from her car to the suites of guests who had just ordered sex from escort lines. (Resp. to MGM Grand 20:26–28 (citing TAC ¶¶ 140–151, 335)). She further alleges that STK knowingly provided her when its manager brokered sex deals between Plaintiff and STK customers he knew or suspected wanted commercial sex. (Resp. to MGM Grand 21:1–3 (citing TAC ¶¶ 155–159, 336)). The manager also directed Plaintiff to specific clients sitting at specific tables and took a cut of her earnings. (*Id.* 21:3–4 (citing TAC ¶¶ 155–159, 336)). She lastly alleges that Tao knowingly provided her when its employee hosts directed her to high rollers they knew or suspected wanted commercial sex in return for a kickback. (Resp. to Tao 10:3–9, ECF No. 185); (*see* TAC ¶¶ 174–183). Based on the plain meaning of the word, "provide," the Court finds that Plaintiff plausibly alleges MGM Grand, STK, and Tao knowingly provided Plaintiff.

In sum, Plaintiff plausibly alleges only that MGM Grand, STK, and Tao knowingly provided Plaintiff.

**ii.  Knew or Recklessly Disregarded Means of Force**

As to the second and third elements, Plaintiff fails to plausibly allege that Tao and STK knew, or at the very least recklessly disregarded, that means of force, threats of force, fraud, or any combination of such means was used to cause Plaintiff to engage in a commercial sex act. The TAC merely alleges that an STK manager and Tao nightclub hosts knew Plaintiff was

engaged in commercial sex, but not that means of force, threats of force, fraud, or any combination of such means were used. (*See* TAC ¶¶ 155–159, 172–187).  Plaintiff generally alleges that on information and belief an STK manager and several hosts at Tao-operated nightclubs knew about Rashid and his relationship to the "Priority Girls" either from experience or by reputation, so they knew that he used a mixture of coercion and fraud to force the women to engage in commercial sex. (TAC ¶ 203).  But this allegation falls short of pleading that Tao and STK knew or should have known about Plaintiff's sex trafficking because Plaintiff's sex trafficker during the period that is not time barred was Walter, not Rashid.  Moreover, this allegation merely alleges that Tao knew of Rashid's connection to a group of girls, not his connection to Plaintiff specifically or that Tao and STK knew Plaintiff was a "Priority Girl" trafficked by Rashid, and there are no allegations that Tao and STK knew Plaintiff was connected to Walter.  Additionally, the allegations that allege MGM Grand's knowledge or reckless disregard are time barred.[9]  Thus, Plaintiff fails to plausibly plead the second and third elements of a TVPRA claim based on direct violator perpetrator liability.

Because Plaintiff fails to plausibly allege every element of direct violator perpetrator liability as to the Defendants, Plaintiff's § 1591(a)(1) claim is DISMISSED with prejudice against Wynn, STK, Tao, and MGM Grand because amendment would be futile.

### iii.  Participant

To establish participant perpetrator liability, Plaintiff must plausibly plead:

---

[9] Plaintiff alleges that an MGM Grand manager, Carl Clayton, "knew that [Plaintiff] was under the control of Rashid." (TAC ¶ 145).  Based on the timeline of events in the TAC, Plaintiff was sex trafficked by Rashid until mid-2013. (*Id.* ¶¶ 229–240).  As the Court previously explained, any allegations related to MGM Grand prior to January 27, 2015, are time barred and cannot form the basis for Plaintiff's TVPRA claim against MGM Grand. The TAC is devoid of any facts that establish MGM Grand knew or recklessly disregarded that means of force, threats of force, fraud, or any combination of such means was used to cause Plaintiff to engage in a commercial sex act for the period that is not time barred.

"Whoever knowingly" "benefits, financially or by receiving anything of value," "from participation in a venture which has engaged in an act described in violation of [(a)(1)]"—*i.e.*, "knowingly assisting, supporting, or facilitating a violation of [(a)(1)]"— knowing or recklessly disregarding that "force, threats of force, fraud, [or] coercion . . . will be used to cause the person to engage in a commercial sex act."

18 U.S.C. §§ 1591(a)(2), (e)(4).

Here, the Court held above that Defendants did not participate in a venture. Thus, Plaintiff's TVPRA claim based on participant perpetrator liability necessarily fails. The Court finds that amendment would be futile and DISMISSES Plaintiff's TVPRA claim based on participant perpetrator liability against Wynn, MGM Grand, STK, and TAO with prejudice.

In sum, Plaintiff's TVPRA claim against Wynn, STK, Tao, and MGM Grand, based on any theory of liability, fails. Accordingly, the Court GRANTS the pending Motions to Dismiss.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendant Wynn's Motion for Certification for Interlocutory Appeal, (ECF No. 172), is **DENIED as MOOT**.

**IT IS FURTHER ORDERED** that Defendant Wynn's Motion to Dismiss, (ECF No. 174), is **GRANTED**. Defendant Wynn is **DISMISSED** as a party with prejudice.

**IT IS FURTHER ORDERED** that Defendant Tao's Motion to Dismiss, (ECF No. 176), is **GRANTED**. Defendant Tao is **DISMISSED** as a party with prejudice.

**IT IS FURTHER ORDERED** that Defendant MGM Grand's Motion to Dismiss, (ECF No. 177), is **GRANTED**. Defendant MGM Grand is **DISMISSED** as a party with prejudice.

**IT IS FURTHER ORDERED** that Defendant STK's Motion to Dismiss, (ECF No. 179), is **GRANTED**. Defendant STK is **DISMISSED** as a party with prejudice.

**IT IS FURTHER ORDERED** that Defendant Wynn's Motions for Leave to File Notice of Supplemental Authority, (ECF Nos. 197–199), are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Wynn's Motion for Leave to File Notice of Supplemental Authority, (ECF No. 200), is **DENIED as MOOT**.

The only remaining Defendant is Jamal Rashid.

**DATED** this __29__ day of January, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court